THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES J. STACK, Defendant-Appellant.

Fourth District   No. 4—92—0852

Opinion filed April 13, 1994.

David P. Bergschneider, of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Following a jury trial in the circuit court of McLean County, defendant James Stack was convicted of aggravated battery (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(b)(6)) and sentenced to a term of five years' imprisonment, to be served consecutively to a prison term he was currently serving for another offense. He now appeals, claiming a new trial is necessary because the trial court erroneously believed it was required to strike his claim of self-defense as a sanction for his counsel's failure to comply with discovery rules. He also argues remand is necessary because the court failed to make proper inquiries in response to defendant's statements at his sentencing hearing that his counsel had ineffectively represented him.

Defendant was charged by indictment with biting McLean County correctional officer Robert Stevens on the wrist (knowing that he was a correctional officer executing his official duties) while several officers attempted to restrain defendant in the county jail.

Defendant was represented by an attorney from the county public defender's office. Before trial, defendant advised the trial court he was not ready to proceed. He complained his counsel had not fully investigated the case and had not subpoenaed two witnesses, correctional officer Doris Woods and former jail inmate Mike Gullo, for testimony. Defense counsel indicated he had spoken with Woods and did not believe her testimony was beneficial. Defendant indicated Gullo was in the "holding" cell and had seen defendant being carried to the "intox holding cell area." Although unable to question him fully, defendant said Gullo would testify that he did not hear defendant threaten the officers and that defendant, to Gullo's knowledge, did not resist the officers. The trial court suggested that defendant and the State stipulate that Gullo would testify to those facts. Defendant refused, stating he wanted Gullo to testify in the event he remembered anything defendant did not have an opportunity to ask him. The court insisted the trial continue as scheduled, reasoning that defense counsel had interviewed several potential witnesses and

there was no reason Gullo could not have been interviewed and subpoenaed if he had useful information.

Robert Stevens testified that during the morning of April 6, 1992, he was wearing his uniform and on duty at the county jail when he was called to the recreation room. Defendant was asked to leave, he refused, and Stevens and three other officers carried him from the room to his cell in the male intox area of the jail. When they arrived at defendant's cell, the officers laid him on the floor on his right side and started to back away. He saw defendant clench his fist and make a sudden movement toward one of the other officers. They again restrained defendant and scuffled with him on the floor of the cell. Stevens was attempting to restrain defendant's upper body by holding his shoulders. His arm was caught between defendant's head and the floor, and defendant started biting him on the left wrist. Stevens started yelling that defendant was biting him. He held the bite for about 30 seconds, until Stevens asked for the stun gun, at which time defendant released his bite on Stevens' wrist. The officers then placed defendant in handcuffs and leg irons. Stevens' wrist was purple and the skin was broken, causing bleeding, which forced him to seek emergency room treatment.

On cross-examination, Stevens testified that defendant did not struggle with the officers carrying him from the recreation room, make any threats to them, or attempt to strike anyone. The sudden movement defendant made toward one of the officers in his cell was as if to strike the officer. Stevens attempted to find a pressure point behind defendant's jawbone to get him to release the bite and, in doing so, his index finger could have poked defendant in the eye. He heard one of the other officers say, "[d]on't even do it," as he saw defendant clench his fist. The only people in the cell during the altercation were defendant and the four officers.

Russell Stevens, another correctional officer present at the time, testified that he was called into the recreation room because defendant refused to leave. When they all arrived, defendant was asked to leave several times, but refused. The officers then carried him to his cell by his arms and legs. After they laid him on the floor of the cell, defendant make a gesture as if to swing at one of the officers, but Stevens could not see defendant's fist. He told defendant not to think about doing it; all the officers then restrained him and Officer Robert Stevens yelled that defendant was biting him.

On cross-examination, Russell Stevens testified that defendant did not threaten, try to strike, or struggle with any of the officers while being carried. When defendant was carried into his cell, the officers sat him on the floor in an upright position.

Officer Ray Donald testified he was on duty in the recreation room when defendant entered. Inmates are not allowed to turn up the volume or change channels on the television. Defendant turned up the volume, and Donald warned him about it. Defendant became angry and began cursing at him, and Donald threatened to send defendant back to his cell if his behavior continued. Defendant continued to curse and got up from his chair, at which time Donald called for assistance. After defendant insisted he should be able to turn up the television volume, the sergeant told defendant he would have to go back to his cell. Defendant refused to go. After the officers returned him to his cell, defendant lunged at one of them and they wrestled him to the floor. He then began biting Robert Stevens, which lasted approximately 90 seconds.

On cross-examination, Donald testified that when the officers initially put defendant in his cell he was standing up. When he lunged at them, they put him on the floor. Rules do not allow inmates to touch the television set. If they want the volume or channel changed, they must ask the officer on duty to do it. When he told defendant not to touch the television, defendant replied that the rule applied only to televisions in the "pods," not the recreation room. Donald told him that inmates were not allowed to touch the one in the recreation room. Donald identified a rule book given to all inmates when they first enter the jail. He conceded the rule in the book regarding television sets mentions only the pods, but he insisted it applied to the recreation room as well.

Officer Curtis Anders testified that he assisted in carrying defendant from the recreation room and placing him on the floor of his cell. One of the officers said, "Don't do it," or, "Don't go for it," then defendant made a sudden move and the officers restrained him. When Robert Stevens tried to grab defendant's hand, he yelled that defendant was biting him. This lasted about one minute.

On cross-examination, Anders testified the officers placed defendant on his back in his cell, with his feet toward the door. One of the officers said, "Don't go for it," and defendant made a turn either to the left or right. That was the sudden movement Anders mentioned earlier. Defendant might have been turning toward the floor or the ledge that goes around the inside of the cell. When he turned on his side, the officers held him on that side. Defendant continued to struggle and, when on his stomach, was subdued by the officers. A "male process room" is located approximately two or three feet from the male intox area. Anders does not remember whether any inmates were in that room when the officers passed there carrying defendant to the male intox area.

After the State rested its case, the assistant State's Attorney made an oral motion to bar defendant from raising the affirmative defense of self-defense, noting that defense counsel had alluded to self-defense during his opening statement. The assistant State's Attorney advised the court that the State had received no notice of an affirmative defense. Defense counsel indicated he believed he had prepared a discovery answer notifying the State of a self-defense claim immediately after the pretrial, but stated he was unable to locate his copy. Defense counsel argued that a self-defense claim was not a surprise to the State, since it had produced every witness to the incident during its case in chief. In granting the motion, the trial judge made the following comments:

"Well, the problem it seems to me is until the opening statement by you, [defense counsel], in which you indicated that it was going to be conceded that the defendant bit the officer, how does the [S]tate know that that's, you know, that you're going to be saying that it's self-defense? I have difficulty without noticing them that self-defense is being asserted as a defense, I don't see how we can attribute the [S]tate's knowledge prior to your opening statement, and without a notice of the—of the self-defense to the [S]tate I think the court is required to bar a self-defense argument to the jury and instructions on the issue. Whether the, you know, whether the—obviously you can argue whether or not the officers were justified in using whatever force they used, and whether or not they are consistent in their testimony or inconsistent in their testimony certainly is a matter of credibility as to whether the [S]tate has prove[d] the offense beyond a reasonable doubt. But— and there [are] certainly some inconsistencies you can talk about. But—I think that this court [is] required to bar your self-defense."

After the court granted a recess for defense counsel to confer with defendant, the court asked defendant whether he had made a decision to testify. Defendant answered that he had not. When the court asked whether defendant wished to call any witnesses, defendant answered, "I'm not addressing the court," and, "All I got to say is my defense was self-defense." Defense counsel indicated to the trial court that he had subpoenaed two witnesses and, since their testimony would merely verify that already given by the State's witnesses, he would not call them. The defense rested without calling any witnesses.

Defense counsel did not file a post-trial motion. Defendant, at the sentencing hearing, made a statement in allocution. Part of his statement was as follows:

"[Defendant]: *** First off, you know, I don't feel that, you know, [defense counsel], due to his case[ ]load or whatever, I don't feel

that I was represented adequately at my trial. There was the issue of my defense which was self-defense and witnesses that I wanted to testify. The paperwork wasn't filed to the [S]tate's [A]ttorney's office indicating what defense I would initiate, and I was unable to assert that defense at trial. Witnesses I thought should have been up here weren't allowed, and then some of them—[o]f course, Doctor Goldberg, jail doctor, and possible other medical staff there, nurses and that, they weren't subpoenaed. For that reason I don't think I was effectively represented in that area."

After defendant's statement, the court sentenced him to five years' imprisonment.

On appeal, defendant first argues that a new trial is necessary because the trial court erroneously believed it was required to bar his affirmative defense as a sanction for his failure to file a discovery response notifying the State of his intent to raise such a defense.

■ The State first responds, and we agree, that defendant waived this argument by failing to file a post-trial motion alleging error in the trial court's ruling. It is elementary that inclusion of an alleged error in a post-trial motion is required to preserve an issue for appellate review. (See *People v. Berry* (1984), 99 Ill. 2d 499, 503, 460 N.E.2d 742, 744; *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129.) Recognizing this fact, defendant also argues we should reach the issue through the plain-error doctrine, or that we should find his counsel ineffective for failing to file a post-trial motion to preserve the issue for appeal. The plain-error doctrine is a narrow and limited exception to the waiver rule. (*People v. Pastorino* (1982), 91 Ill. 2d 178, 188, 435 N.E.2d 1144, 1149; *People v. Gilman* (1983), 113 Ill. App. 3d 73, 75, 466 N.E.2d 595, 596.) Plain error exists only when the substantial rights of the defendant are affected or the evidence is closely balanced. (*People v. Griffiths* (1983), 112 Ill. App. 3d 322, 326, 445 N.E.2d 521, 526; *People v. Pickett* (1973), 54 Ill. 2d 280, 282-83, 296 N.E.2d 856, 858.) We find that the issue defendant raises is fundamental and, therefore, elect to consider this argument under the plain-error doctrine.

■ The State also argues that defendant waived this argument (or is estopped) by his refusal to participate and cooperate with the court and his attorney in the presentation of his defense. The State points to defendant's refusal to stipulate to Mike Gullo's testimony, his refusal to tell the court whether he would testify, and his refusal to tell the court which, if any, witnesses he would call. The State further contends that after the court excluded his evidence of self-defense, defendant should have made an offer of proof indicating

what his affirmative defense proposed to show, rather than "sulking like a child" and refusing to inform the court whether he would testify and who his witnesses would be. It further argues any error in the trial court's ruling is harmless, alleging it is "self-evident" from the record that defendant had no viable defense to the charge.

We reject the State's argument that defendant may somehow be estopped because he did not cooperate when it was time to present his case or because he should have made an offer of proof setting forth his defense. Regarding defendant's cooperation at trial, we note that defendant's refusal to stipulate to Mike Gullo's testimony occurred before the trial started, and is therefore completely irrelevant. Defendant stated he refused to stipulate to this testimony because he had not been able to question Gullo and was not certain as to the exact nature of his testimony. Thus, this decision was entirely separate from the trial court's rulings regarding self-defense.

The State cites *People v. Myles* (1981), 86 Ill. 2d 260, 427 N.E.2d 59, in support of its claim that defendant should be estopped from making his argument on appeal. In *Myles*, the defendant refused to cooperate with his appointed attorney in preparing his defense. He repeatedly sought to fire his privately retained attorney, objected to representation by the public defender, and refused to represent himself. His courtroom behavior was disorderly, and he instructed his attorney to do nothing at trial on his behalf. He refused to enter the courtroom and removed his clothing so that he could not be brought into court. After his conviction, he appealed. One of his arguments on appeal was ineffective assistance of counsel. The supreme court found he was estopped by his actions to assert incompetence of counsel. (*Myles*, 86 Ill. 2d at 270, 427 N.E.2d at 64.) In the instant case, defendant's actions can hardly be compared to those of the defendant in *Myles*.

Regarding the State's argument concerning an offer of proof, we note that the purpose of an offer of proof is to disclose to the trial court and opposing counsel the precise nature of the evidence proposed to be offered and to enable a reviewing court to determine whether exclusion of the evidence was proper. (*People v. Jackson* (1989), 180 Ill. App. 3d 78, 91, 535 N.E.2d 1086, 1094.) The trial court here based its decision to exclude defendant's proposed evidence of self-defense upon the court's belief that it was required to exclude the evidence, not because it found any evidence inadmissible. On this basis, an offer of proof would have added nothing.

Further, it was not necessary under these circumstances for defendant to make an offer of proof to inform the reviewing court of the nature of his defense. The record clearly indicates that defendant

intended to claim he bit the officer in self-defense. Defense counsel informed the court that self-defense was defendant's only defense. Defendant did not deny biting the officer. Also, his anticipated defense was outlined for the jury in his opening statement:

"I think what you may find is that he was simply taken to another room where he would be alone with the officers, and that the altercation occurred there. We think the evidence will show that he did not attack anyone or threaten anyone. He *may* have been profane, but did not threaten or attack anyone. And in fact when he was sat down, he was, shall we say, roughed up anyway. We think that—we will admit the evidence will show that he was—that he bit one of the officers on the arm. We don't think the evidence will show that he got ahold, as the prosecutor told you, of the officer's arm. We think the evidence will show that the officer stuck his hand in his face, was grabbing his face and poking him at the time. That in fact he, while being restrained by three other officers, was defending himself from this hand being rubbed across his face in the only way that he could. We think that is what the evidence is going to show."

Last, we interpret the State's contention that it is "self-evident" that defendant had no viable defense to the charge of aggravated battery as arguing that evidence of defendant's guilt is not closely balanced, and we should therefore not invoke the plain-error doctrine. (See *Griffiths*, 112 Ill. App. 3d at 326, 445 N.E.2d at 526.) Because we have already concluded that the issue defendant raises is fundamental, we reject this argument as well.

The State argues on the merits that even though the trial court stated it was required to bar the affirmative defense, it in fact exercised its discretion to do so. We disagree.

Supreme Court Rule 415(g)(i) provides as follows:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court *may* order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." (Emphasis added.) (134 Ill. 2d R. 415(g)(i).)

The committee comments indicate that the intent of the rule is to leave the question of sanctions to the discretion of the trial court. See 134 Ill. 2d R. 415, Committee Comments.

■ Accordingly, the trial court here was not *required* to bar defendant's affirmative defense. Instead, the appropriate sanction to be applied for violation of a discovery rule rests within the trial

court's discretion, and the decision of that court is given great weight on appeal. (*People v. Morgan* (1986), 112 Ill. 2d 111, 135, 492 N.E.2d 1303, 1312; *cf. People v. Whalen* (1994), 158 Ill. 2d 415, 423-28 (employing the abuse of discretion standard in determining whether the trial court erred in barring expert testimony as a sanction against the defendant's late disclosure of the expert).) Here, the trial court's comments reveal that because of the discovery violation, the court believed it had no alternative but to bar defendant's affirmative defense. In light of the court's statement that it was "required" to exclude any evidence of self-defense, we find the State's argument that the court in fact exercised its discretion without merit. Because the record in the instant case shows that the trial court did not exercise its discretion regarding the violation of the discovery rules, this court is deprived of the opportunity to evaluate the trial court's discretion in ordering the sanction of barring defendant's evidence. For this reason, defendant's conviction and sentence must be reversed and the cause remanded for a new trial.

We emphasize that the trial court committed reversible error here by not exercising its discretion as mandated by Supreme Court Rule 415(g). It is a separate question—one on which we express no opinion—whether, in exercising its discretion, the trial court would have abused its discretion by excluding this evidence. The trial court enjoys wide discretion to address a violation of Rule 415(g); it commits error when, as here, it fails to exercise that discretion in fashioning an appropriate sanction.

In light of our holding that the trial court's discovery sanction constitutes plain error, we need not reach defendant's other arguments.

For the reasons stated, defendant's conviction and sentence are reversed and the cause remanded for a new trial.

Reversed and remanded.

McCULLOUGH, P.J., and STEIGMANN, J., concur.