THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff and Respondent-Appellee, v. ELLIS PARTEE, Defendant and Petitioner-Appellant.

First District (2nd Division)   No. 1—92—0964

Opinion filed December 20, 1994.

Michael J. Pelletier and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Peter Fischer, and Sang Won Shim, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

This appeal arises from the dismissal of a post-conviction petition without an evidentiary hearing. Petitioner Ellis Partee raises issues concerning racial discrimination in jury selection, judicial prejudice requiring the substitution of judges, and the appointment of replacement counsel upon the public defender's withdrawal from representation. For reasons that follow, we reverse and remand for an evidentiary hearing.

On June 7, 1984, petitioner was convicted of attempted armed robbery and aggravated battery. Petitioner's convictions were affirmed by this court in 1987, but his sentences were modified to 30 years for attempted armed robbery and five years each for three counts of aggravated battery, the aggravated battery sentences to run consecutively to each other but concurrently with the attempted armed robbery sentence. All of these sentences were to be consecutive to another 30-year sentence imposed for a Du Page County conviction. See *People v. Partee* (1987), 157 Ill. App. 3d 231, 511 N.E.2d 1165, *appeal denied* (1987), 116 Ill. 2d 571, 515 N.E.2d 121, *cert. denied* (1988), 484 U.S. 1072, 98 L. Ed. 2d 1006, 108 S. Ct. 1043.

Prior to the beginning of *voir dire* in his trial, which took place before the decision in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, was handed down by the United States Supreme Court, petitioner (who was acting *pro se*) had specifically requested that the prosecution be precluded from using its peremptory challenges in a racially discriminatory manner. The court rejected this request, ruling that the State could use its peremptory challenges "in any way they wish to." Subsequently, during the course of *voir dire*, petitioner objected to the State's allegedly racially discriminatory use of peremptory challenges, stating at one point

that the State had used five, all against African-Americans. The court at that point again made it clear that it rejected the premise of petitioner's argument, stating that "it's of no significance to this Court whether a person was black or white or blue or green and let that be very clear on the record, Mr. Partee."

Before the questioning of jurors resumed, petitioner requested that he be allowed to make a record so that he could raise on appeal the issue of whether the State was discriminating in the exclusion of African-Americans, and specifically asked that the court acknowledge that five black venirepersons had already been excluded by the State. When the State objected, the court sustained the objection and ruled that it would not state the race of the jurors for the record, because this was "unimportant to this Court." Later during *voir dire*, petitioner stated that the State, which by that time had used eight peremptory challenges, had used seven of these to exclude African-American venirepersons, and requested the court to acknowledge the fact. The State again objected (although it did not dispute the correctness of the statement), and the court again sustained the objection, stating this time that "it is insignificant to this Court." Petitioner protested that he was trying to make a record, but the court persisted in its refusal to take cognizance of the race of the venirepersons.

Shortly thereafter, petitioner stated that the State had excluded all of the potential black jurors up to that point. Later, after a request from petitioner that the record reflect that, as of that point, all of the seated jurors were white, and that the prosecution was practicing racial discrimination in selecting the jury, the court stated, "Mr. Partee, it makes no difference. *** I will not recognize whether they are white or black or green ***." Petitioner subsequently alleged that all African-American venirepersons save one had been systematically excluded from the jury.

Petitioner had requested in his direct appeal that the cause be remanded for a hearing pursuant to *Batson*, which had been decided by that time, to determine whether the prosecution had used its peremptory challenges to exclude African-Americans from the jury, a practice which violates equal protection of the law and the right to a fair jury trial. (*Partee*, 157 Ill. App. 3d at 266-68, 511 N.E.2d at 1188-89.) Although petitioner's jury selection had preceded the decision in *Batson*, that case was decided while petitioner's direct appeal was pending, and under *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708, he was entitled to the benefits of the *Batson* decision. This court rejected petitioner's claim, on the ground that petitioner had not made a *prima facie* case of racial discrimina-

tion because the record failed to reflect the race of the excluded and accepted venirepersons, because this deficiency was not overcome by petitioner's statements for the record about the race of the excluded venirepersons, and because the fact that a single African-American juror may have been seated demonstrated that no *Batson* violation had taken place. *Partee*, 157 Ill. App. 3d at 268, 511 N.E.2d at 1189.

On August 13, 1984, petitioner filed a petition for post-conviction relief. The petition was dismissed without an evidentiary hearing on October 28, 1985. In an order issued pursuant to Supreme Court Rule 23 (134 Ill. 2d R. 23), however, on July 19, 1988, this court reversed and remanded for further proceedings due to the court's failure to enter the order of summary dismissal within 30 days of the filing of the petition.

On October 27, 1988, the State moved to dismiss the petition. On March 1, 1990, petitioner filed a supplemental petition. On or about March 20, 1991, petitioner filed a motion for the public defender to withdraw and for appointment of private counsel or to proceed *pro se*. On April 15, 1991, petitioner moved to withdraw his prior petition to have the public defender withdraw, which was granted.

On June 24, 1991, petitioner filed a *pro se* motion for recusal and a motion for substitution of judges. The public defender filed its own motion for recusal as well. On that date, the presiding judge informed the parties in open court that she had received a letter from petitioner which she had not opened, and then tendered the letter to the assistant public defender assigned to the case. Petitioner then read his letter into the record. In the letter, petitioner stated that he had no confidence in the assistant public defender representing him in the post-conviction proceeding.

Petitioner then asked the court to consider his motion for substitution of judges. The court denied the motion for recusal, declaring, "No, I will not recuse myself." The court determined, however, that another judge should rule on the motion for substitution of judges. The case was continued to July 1, 1991, and was assigned to another judge.

On July 1, 1991, a hearing was convened before the second judge to consider petitioner's motion for substitution of judges and the public defender's office's motion to withdraw, filed that day. The hearing was continued until July 18, 1991. At the hearing, Mary Ellen Schmitt testified that she is a sergeant in the Cook County sheriff's department. She had made no record of anything the prosecutor may have said to her about petitioner. When petitioner came out of the Cook County jail, a security meeting was held where all of the parties were represented. There had also been other security meetings.

When asked if the assistant State's Attorney had come to her and said that petitioner was the most dangerous person to come through the Des Plaines court in the last four years, Schmitt stated that he had not. The assistant State's Attorney had, however, spoken with a male deputy sheriff. According to Schmitt, she, the assistant State's Attorney, Assistant Public Defender Allen Sincox, and another assistant public defender had gathered in the judge's chambers.

Petitioner, who was proceeding *pro se*, then informed Schmitt that although Sincox had represented him, he had not attended the meeting. He stated that he and Schmitt had agreed that Schmitt would testify that when the assistant State's Attorney came in and saw petitioner handcuffed to a chair, he yelled at Schmitt and told her not to hold petitioner in that manner. Schmitt then yelled back at the assistant State's Attorney that he had his department and she had hers. The assistant State's Attorney then went into the judge's chambers. Another deputy sheriff came back from chambers and told Schmitt that the judge wanted to see her. Schmitt went and saw the judge, returned, and told petitioner, "I'm sorry, Ellis, but the Judge has directed that I keep you locked up in this bullpen ***."

When petitioner then asked Schmitt if he was fabricating what he had just said, she replied, "No, I was ordered by the Judge to put you back into the lock-up facility for a certain amount of time, and then you would be taken out again so that you could read your papers." Schmitt did not remember if Sincox was present when she was informed that the judge wanted to see her. Finally, she denied telling petitioner that she was afraid to testify.

The assistant public defender informed the court that the entire public defender's office was asking leave to withdraw, since petitioner insisted on, and would continue to insist on, deciding which issues were to be presented in the post-conviction petition. Petitioner had prohibited her absolutely from raising certain issues in the petition. In addition, petitioner wished to control the method by which the public defender's office obtained evidence and testimony in connection with certain issues to be raised in the post-conviction petition. The assistant public defender intended to allege ineffective assistance of appellate counsel in the post-conviction petition, and petitioner would not allow the allegation to be put forward. The assistant public defender explained that a post-conviction petition must allege a constitutional violation, not merely retry petitioner's case.

On August 5, 1991, the circuit court allowed the public defender to withdraw as petitioner's counsel. The court allowed petitioner a continuance to attempt to obtain a *pro bono* attorney from a law firm to represent him. On September 30, 1991, petitioner appeared without

counsel and announced that he had failed in his attempt to obtain *pro bono* counsel and had not retained counsel. The court noted that petitioner had written a letter to the court to that effect on September 13, 1991, also requesting appointment of other counsel. The court stated that petitioner would eventually have another attorney appointed to represent him, from a list kept by the presiding judge. The court then denied petitioner's motion to substitute judges and remanded the case back to the original trial judge.

On October 4, 1991, the original judge stated, when told by petitioner that he wanted representation other than the public defender, that there was no authority to appoint other counsel except when there was a conflict between codefendants. When petitioner indicated that he wanted to be represented by counsel, the court indicated that it would again appoint the public defender. The court also indicated that the second judge had ruled on the motion for substitution of judges. The case was continued for three days in order for the public defender to appear.

On October 7, 1991, petitioner filed another motion for substitution of judges. The court refused to entertain the motion until the question of petitioner's counsel was resolved. Petitioner stated that he did not want to be represented by the public defender, that he did not wish to proceed *pro se*, that he did wish to be represented by counsel, and that he could not afford to hire his own attorney. The court again stated that it had authority only to appoint the public defender and did so.

On November 8, 1991, the public defender again moved to withdraw as petitioner's counsel. The principal basis for the motion was the fact that petitioner had moved to amend a pending Federal lawsuit to include the office of the public defender as well as individual assistant public defenders as defendants. The court granted the motion. Petitioner then requested that an attorney be appointed to represent him, and the court again asserted that it could not appoint counsel other than the public defender. When defendant then asked to have the public defender reappointed, the court stated that he could be represented only if he could hire his own attorney.

On December 6, 1991, petitioner appeared *pro se*. Petitioner filed another petition for substitution of judges and a motion to strike the pleadings of the State, both of which the court denied. Petitioner then presented a motion for appointment of counsel and a memorandum in support, which he had filed on November 17, 1991. The court stated in response that the basis for its order disqualifying the public defender was the Federal lawsuit naming the office as a party defendant and the possibility of conflict of interest that arose thereby.

Petitioner pointed out that the Federal district court had denied his motion to join the office of the public defender, or any individual assistant public defender, to his lawsuit, so that in fact there was no conflict. The court denied petitioner's motion to appoint counsel.

The court then granted the State's motion to dismiss the petition; allowed petitioner leave to file his second amended petition; and after hearing argument on some of the allegations in the second amended petition, denied it as well. This appeal followed.

## I

In response to the *Batson* issue raised in petitioner's direct appeal, this court stated:

> "In the case at bar *** the record fails to reflect the final racial composition of the jury, the race of the venire, or the race of the eight veniremen excused by the prosecutor. Defendant's self-serving statement that the prosecutor used every one of his peremptory challenges to excuse five black veniremen is not verified in any way in the record. Moreover, we note that defendant remarked during the instruction conference, '[W]e have a practically all-white jury, eleven white jurors on this thing,' giving this court good reason to believe that black veniremen were not systematically excluded. Defendant's inability now to present a *prima facie* showing that the prosecutor used his peremptory challenges to exclude the black veniremen from the petit jury indicates that upon remand he would be equally unsuccessful. (See *People v. Johnson* (1986), 150 Ill. App. 3d 1075, 1085[, 502 N.E.2d 304, *appeal denied* (1987), 113 Ill. 2d 580, 505 N.E.2d 358, *appeal denied* (1987), 114 Ill. 2d 552, 508 N.E.2d 732] (wherein this court held that where the appellate record reflects that defendant cannot make an affirmative showing as required in *Batson* on remand, such issue must be considered waived).) We find that defendant's contention that this case be remanded for a *Batson* hearing is without foundation." *Partee,* 157 Ill. App. 3d at 268, 511 N.E.2d at 1189.

It was on the basis of this decision that the post-conviction court dismissed the petition on this point. Petitioner asserts, however, that the legal bases of this court's decision on direct appeal were faulty, and it was therefore error for the circuit court to dismiss the petition without an evidentiary hearing on the basis of *res judicata.* That doctrine, petitioner argues, does not preclude reexamination of an issue on the merits when the relevant law has changed since the direct appeal, or when fundamental fairness so requires. He further argues that the relevant law has changed in four significant ways since his direct appeal in 1987. The State responds that the circuit court

properly dismissed the petition, because petitioner failed to provide sufficient evidence in support of his *Batson* violation claim, and because the claim had already been adjudicated by this court on direct appeal. Petitioner replies that the State fails to consider fully the changes in the law since the time of his direct appeal and that those changes entitle him to an evidentiary hearing on his *Batson* claim.

■ Petitioner is correct in his contention that the law has changed significantly since this court ruled on his direct appeal. Further, as he asserts, these changes entitle him to a *Batson* hearing. See *People v. Cowherd* (1983), 114 Ill. App. 3d 894, 449 N.E.2d 589 (in post-conviction appeal, appellate court grants relief on issue which it had previously rejected in direct appeal on basis of facts contained in trial record, holding that *res judicata* did not bar relief since basis of post-conviction claim was case law which had developed after direct appeal).

The first way the law has changed since petitioner's direct appeal is that in a pre-*Batson* case such as this one, it is now not required that a defendant have made a *prima facie* case in order to obtain a remand for further *Batson* proceedings.

In *People v. McDonald* (1988), 125 Ill. 2d 182, 195, 530 N.E.2d 1351, 1356, the Illinois Supreme Court expressly rejected the argument that a defendant whose case was pending on direct appeal when *Batson* was decided waives his *Batson* claim if the record does not reflect the racial composition of the jury. The court rejected the State's contention that any deficiency in the pre-*Batson* record results in waiver of the *Batson* claim, reasoning that a pre-*Batson* defendant should be given the opportunity to avail himself of the *Batson* decision. It stated that it would be obviously unfair to hold that a defendant waived a claim he attempted to raise at trial but was precluded from raising on the basis of the prevailing case law at that time, because he failed to sustain a burden that had not yet been articulated by any court. The circuit court in the original trial in this case clearly believed that the prosecution could use its peremptory challenges "in any way they wish to," and its refusal to allow the making of a record on the issue, coupled with the fact that the proper method of establishing a *prima facie Batson* showing had not yet been articulated by any court, directly resulted in whatever inadequacy may have existed in the record. *McDonald*, 125 Ill. 2d at 195, 530 N.E.2d at 1356.

In *People v. Mitchell* (1991), 221 Ill. App. 3d 979, 991-93, 582 N.E.2d 1193, 1200-02, a post-conviction appeal similar in all respects to this case, this division of this district relied on *McDonald* and its

progeny to render the precise holding that petitioner now seeks. On direct appeal in *Mitchell*, this court had rejected a *Batson* claim on the ground that the record did not indicate the race of the prospective jurors, that "the only record of the race of the excluded jurors [was] the statement of defense counsel," and that the defendant had failed to make a *prima facie Batson* showing. (*Mitchell*, 221 Ill. App. 3d at 991, 582 N.E.2d at 1200.) As petitioner did here, Mitchell filed a post-conviction petition raising the *Batson* issue, which was rejected by the circuit court on *res judicata* grounds. This court acknowledged that *McDonald* and other cases that had been decided subsequent to the direct appeal in *Mitchell* had held that " 'deficiencies in the *voir dire* record [of a pre-*Batson* case] do not result in waiver of a *Batson* claim.' " (*Mitchell*, 221 Ill. App. 3d at 993, 582 N.E.2d at 1201, quoting *People v. Lann* (1990), 194 Ill. App. 3d 623, 633, 551 N.E.2d 276, 283, *appeal denied* (1990), 132 Ill. 2d 550, 555 N.E.2d 381, and citing *People v. Andrews* (1989), 132 Ill. 2d 451, 463, 548 N.E.2d 1025, 1029.) It concluded that its earlier decision on direct appeal in *Mitchell* had been overruled by these subsequent cases and that *res judicata* therefore did not preclude the granting of the relief requested by the petitioner in that case. *Mitchell*, 221 Ill. App. 3d at 993, 582 N.E.2d at 1201-02.

A subsequent decision by the Illinois Supreme Court confirmed the propriety of this court's holding in *Mitchell*. In *People v. Coleman* (1993), 155 Ill. 2d 507, 511-16, 617 N.E.2d 1200, 1203-06, the supreme court accepted the defendant's argument that a pre-*Batson* defendant who is entitled by *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708, to the benefits of *Batson* "cannot be denied an opportunity to establish a *prima facie* case of discriminatory peremptory strikes due to deficiencies in a pre-*Batson* record." 155 Ill. 2d at 511, 617 N.E.2d at 1203.

The second way the law has changed since petitioner's direct appeal is that a party's on-the-record statements about the race of the excluded venirepersons are now an acceptable means of making a record for *Batson* purposes. As this court acknowledged in *Mitchell*, the supreme court's decision in *People v. Andrews* (1989), 132 Ill. 2d 451, 463, 548 N.E.2d 1025, 1029, made it clear that a party's representations about the race of excluded jurors may be considered when determining whether a sufficient record has been made, particularly where, as in this case, they are not disputed by the prosecutor. *Mitchell*, 221 Ill. App. 3d at 992, 582 N.E.2d at 1201; see also *Coleman*, 155 Ill. 2d at 516, 617 N.E.2d at 1205.

The third way the law has changed since petitioner's direct appeal is that where the circuit court sustains the State's objections

and thereby prevents the defendant from making a record of the race of the excluded venirepersons, it is now improper to hold that a waiver exists because of a deficient record. Our supreme court held, also in *McDonald*, that when a defendant attempts to establish a record of the race of the venirepersons but is precluded from doing so by objections of the State, it is improper to hold that the defense has waived the claim due to insufficiency of the record. (*McDonald*, 125 Ill. 2d at 195, 530 N.E.2d at 1356-57.) This is precisely what occurred in this case, and the *McDonald* holding on this point also demonstrates the basic unfairness of relying on this court's earlier decision on direct appeal to reject a post-conviction claim.

The fourth way the law has changed since petitioner's direct appeal is that the seating of one or more African-American jurors does not now mean that a *Batson* violation has not occurred, nor that a *prima facie Batson* showing has not been made. *People v. Andrews* (1992), 146 Ill. 2d 413, 433-34, 588 N.E.2d 1126, 1137-38; *Coleman*, 155 Ill. 2d at 516, 617 N.E.2d at 1205-06; *People v. Freeman* (1987), 162 Ill. App. 3d 1080, 1094, 516 N.E.2d 440, 449; *People v. Johnson* (1987), 159 Ill. App. 3d 991, 996, 513 N.E.2d 852, 855-56, *appeal denied* (1987), 117 Ill. 2d 549, 517 N.E.2d 1091, *cert. denied* (1988), 488 U.S. 830, 102 L. Ed. 2d 60, 109 S. Ct. 84; see also *Alvarado v. United States* (1990), 497 U.S. 543, 111 L. Ed. 2d 439, 110 S. Ct. 2995.

The State's attempt to distinguish *Mitchell* is unpersuasive. The State argues that *Mitchell* and two of the cases upon which it relies, *McDonald* and *Andrews*, at least contained statements of an attorney that the prosecution had used peremptory challenges to exclude African-Americans, whereas in this case there are only the unsupported and self-serving statements of the petitioner. Even if this were true, the distinction would be without significance. There is no logic to the State's asserted distinction between statements of attorneys and statements of self-represented defendants. Petitioner represented himself at the time of *voir dire*. He attempted in every possible way to preserve a record on his claim of racial discrimination in *voir dire*. If petitioner is treated differently from other defendants whose attorneys made the kinds of on-the-record assertions that petitioner made, simply because petitioner represented himself, it would be tantamount to penalizing him for exercising his sixth amendment right to represent himself. Such a penalty is clearly impermissible. *Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525.

The State takes a quotation from *Andrews* out of context when it implies that the policy reasons behind the rule that pre-*Batson* defendants should get *Batson* hearings even if the record was

insufficiently preserved do not apply in this case. The court in *Andrews* noted that at the *Batson* hearing the defendant might be able to introduce additional evidence, the trial judge might have notes or independent recollection, and the defendant might be able to call jurors or defense counsel. (*Andrews*, 132 Ill. 2d at 463, 548 N.E.2d at 1030.) In this case, the State asserts, it is certain that the judge has no notes of the race of the venirepersons, and petitioner represented himself at *voir dire*. It is, however, entirely possible that the judge retains an independent recollection of the accuracy of petitioner's assertion, that the petitioner might be able to call venirepersons to testify, the prosecutor may have notes or independent recollection of the events of the trial, and others present in the courtroom might have pertinent knowledge. In this regard, it is significant to note that petitioner attached an affidavit of one excluded black venireperson to his amended petition, and the record reflects that the location of several additional excluded black venirepersons is known.

The State does not even attempt to distinguish *Coleman*, which establishes petitioner's right to a *Batson* hearing even more clearly than does *Mitchell*. Similarly, the State fails to distinguish this division's holding in *Lann*, which was relied upon in *Mitchell*.

Consistent with prevailing legal principles regarding *Batson* claims made by those defendants whose *voir dire* occurred prior to *Batson* but who are entitled to the benefits of *Batson* under the limited retroactivity principles of *Griffith v. Kentucky*, this court must reverse the circuit court's dismissal of the post-conviction petition without an evidentiary hearing and remand the cause for a *Batson* hearing, at which petitioner will have the opportunity to present all relevant facts and circumstances to the circuit court for its consideration in determining whether a *prima facie* case of discrimination is raised by the prosecutor's exercise of his peremptory challenges at petitioner's trial.

## II ·

Petitioner next asserts that where the circuit court granted the motion of the public defender's office to withdraw due to a conflict of interest, it erred in refusing to appoint replacement counsel prior to granting the State's motion to dismiss the post-conviction petition without an evidentiary hearing. He argues that the Post-Conviction Hearing Act (725 ILCS 5/122—4 (West 1992)) requires the appointment of counsel to represent an indigent post-conviction petitioner where the petition is not properly dismissed as frivolous within 30 days of its filing. Since the original petition was improperly dismissed after 30 days had passed from the date of filing, the circuit court

properly appointed the public defender upon remand. When the public defender withdrew due to a conflict of interest, petitioner argues, he retained his right to appointed representation.

The State responds that the circuit court properly denied petitioner's request for counsel other than the public defender because there was no showing of good cause. Further, the State argues, petitioner is estopped from complaining of lack of representation where the public defender's withdrawal was directly attributable to petitioner's deliberate and recalcitrant conduct.

Petitioner replies that the State does not dispute any of the essential elements of his claim. Further, he argues, even assuming that the lawsuit he had filed would have created a legitimate conflict, that conflict evaporated when the Federal court refused to allow the public defender to be joined as a party defendant to the suit. The circuit court therefore should have reappointed the public defender if it did not appoint other counsel.

There is no constitutional right to the assistance of counsel in post-conviction proceedings. (*People v. Flores* (1992), 153 Ill. 2d 264, 276, 606 N.E.2d 1078, 1084, *cert. denied* (1993), 510 U.S. 831, 126 L. Ed. 2d 68, 114 S. Ct. 102.) Our legislature, however, has provided by statute for the appointment of counsel to indigent defendants who file *pro se* post-conviction petitions. (*People v. Johnson* (1993), 154 Ill. 2d 227, 237, 609 N.E.2d 304, 309; 725 ILCS 5/122—4 (West 1992).) Under the Post-Conviction Hearing Act, "there is no absolute right to appointment of non-public-defender counsel, and *** such appointment is within the discretion of the trial court." (*People v. Smith* (1967), 37 Ill. 2d 622, 623-24, 230 N.E.2d 169, 170.) A petitioner "is entitled to appointment of an attorney other than the public defender 'only upon a showing of good cause *** and, in the absence of a showing of good cause, it is within the trial court's discretion to deny such a request.' " *People v. Jones* (1984), 129 Ill. App. 3d 368, 372, 472 N.E.2d 818, 821, quoting *People v. Drew* (1976), 36 Ill. App. 3d 807, 810, 345 N.E.2d 45, 48.

■ When the circuit court denied petitioner's motion for appointment of counsel on December 6, 1991, we assume *arguendo* that petitioner had failed to make the showing of good cause required for the appointment of counsel other than the public defender. It was thus within the circuit court's discretion to deny petitioner's motion. However, the record indicates that the judge believed that she was unable to appoint counsel other than the public defender; she so stated several times. Under these circumstances, while denying petitioner's motion was within the judge's discretion, the record indicates that the judge failed to exercise that discretion, apparently

believing that she lacked any option in the matter. This court has recently held that where a circuit court erroneously believes that it has no discretion in a matter, its ruling on a matter requiring the exercise of discretion must be reversed on appeal where it palpably fails to exercise that discretion. See *People v. Stack* (1994), 261 Ill. App. 3d 191, 633 N.E.2d 42.

This court therefore must also reverse the circuit court's denial of petitioner's motion for appointment of counsel other than the public defender. As did the court in *Stack*, we specifically make no finding as to whether the circuit court would have abused its discretion if it had exercised it in denying petitioner's motion. *Stack*, 261 Ill. App. 3d at 199, 633 N.E.2d at 585-86.

### III

Because we reverse the circuit court's dismissal of the petition for post-conviction relief without an evidentiary hearing and remand for a *Batson* hearing, and we reverse the circuit court's denial of petitioner's motion for appointment of counsel other than the public defender, it is not necessary for us to reach petitioner's other claims here.

Reversed and remanded.

SCARIANO and McCORMICK, JJ., concur.