THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD E. STEWART, Defendant-Appellant.

Fourth District    No. 4—97—0852

Argued September 22, 1998.—Opinion filed March 26, 1999.

COOK, J., specially concurring.

Daniel D. Yuhas, John M. McCarthy (argued), Catherine K. Hart, and Dino Hyssen, all of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

On July 17, 1997, a Champaign County jury convicted defendant,

Richard E. Stewart, of two counts of predatory criminal sexual assault of a child under the age of 13 (720 ILCS 5/12—14.1(a)(1) (West 1996)). In August 1997, the court sentenced defendant to two concurrent 18-year prison terms, granted him 169 days' credit, and applied the truth-in-sentencing provision, ordering him to serve 85% of his prison term (see 730 ILCS 5/3—6—3(a)(2)(ii) (West 1996)). Defendant appeals, arguing (1) his attorney provided ineffective assistance, (2) the admission of hearsay evidence violated his confrontation and due process rights, and (3) his judgment of sentence should reflect day-for-day credit. We reverse and remand.

## I. BACKGROUND

In March 1997, defendant was charged with two counts of predatory criminal sexual assault of a child under the age of 13. 720 ILCS 5/12—14.1(a)(1) (West 1996). For approximately 1½ years prior to his arrest, defendant lived with his sister, Christina, and her four children in Urbana, Illinois. The State alleged defendant abused Christina's 11-year-old daughter, T.N., during this time.

In July 1997, prior to defendant's trial, the court conducted a hearing to consider hearsay testimony pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10 (West 1996)). At this hearing, T.N. testified during the time defendant lived with her mother he would hug her, kiss her on the neck and cheek, fondle and squeeze her breasts, place his finger in her vagina and move it around, and place his mouth on her vagina. T.N. stated the abuse frequently occurred while family members were in the house. T.N. revealed the abuse to her mother in March 1997. T.N. also told an investigator from the police department and Dr. Kathleen Buetow about the abuse.

Christina testified defendant began living with her and her children in October 1995. In March 1997, she overheard an argument between T.N. and her brother, D.N. Christina took T.N. aside to discuss sexual matters with her. At this time, T.N. told Christina defendant had sexually molested her. Christina stopped questioning T.N. and contacted the police. On cross-examination, Christina stated she contacted her brother and sister, who came to the house and spoke with T.N. for a few minutes before the police were contacted. Christina also stated she did not hear the substance of T.N.'s argument with T.N.'s brother.

Police investigator Dan Morgan interviewed T.N. after Christina reported the abuse. Investigator Morgan explained to T.N. why he was called to the house and asked her open-ended questions about the abuse. T.N. told Morgan the last incident occurred two weeks earlier

while defendant was helping with her homework. At this time, defendant picked T.N. up and sat her on his lap while he kissed her neck and cheek. He also fondled her breasts, reached his hand in her pants, inserted his finger in her vagina, and attempted to place her hands inside the front of his pants. T.N. told Morgan similar incidents occurred two or three times per week.

T.N. explained to Morgan one episode in the laundry room when defendant picked her up, placed her on the washing machine, pulled her pants down, and "licked her vagina." This incident occurred while T.N. was home from school because of illness. On cross-examination, Morgan stated T.N. indicated her mother was home during the laundry room incident and defendant stopped because her brother came home from school. Morgan also stated some of T.N.'s time periods and dates were vague.

Based on this testimony, the court concluded the time, content, and circumstances surrounding T.N.'s hearsay statements made them reliable. Accordingly, Christina and Investigator Morgan would be permitted to testify at the trial.

At the July 1997 trial, T.N. testified to a more detailed account of defendant's actions. In addition to the facts set forth above, she stated she spent the night at defendant's apartment before he moved in with her mother. On this night, T.N. slept in defendant's bed and he slept on the couch. During the night, defendant got into bed with T.N., reached under her pajamas, and inserted his finger into her vagina and moved it around. When T.N. became startled, defendant stated he thought she was someone else.

T.N. also provided greater detail regarding the laundry room incident. She stated she was taking defendant's mail to him in the laundry room when he abused her and he stopped because he heard T.N.'s brother come home from school. T.N. did not tell her mother about the abuse because defendant told her he would go back to prison if she told anyone.

T.N. revealed the abuse after Christina overheard her arguing with D.N. about her involvement with a boy named "Mikey." Christina asked T.N. if she was sexually active. T.N. denied any sexual activity five or six times until Christina stated she would take T.N. to the doctor to determine if she was sexually active. T.N. then asked her brother to leave the room and told Christina about defendant's abuse.

Christina testified T.N. had a good relationship with defendant when he first moved into her home. However, T.N. became belligerent with defendant, stating she hated him and wished he would move out, and their relationship deteriorated throughout January and February 1997.

Investigator Morgan's testimony was similar to his testimony during the section 115—10 hearing.

Dr. Kathleen Buetow testified on behalf of the State. At the time, Dr. Buetow was a pediatrician with Carle Clinic and a member of the child protection team, a group of professionals organized to evaluate abused or neglected children. Dr. Buetow examined T.N. and found no physical injuries. She stated her findings were consistent with the type of sexual abuse alleged. Dr. Buetow's description of defendant's abuse as related to her by T.N. was consistent with T.N.'s testimony.

Defendant denied sexually abusing T.N. He stated he had a good relationship with T.N. Character witnesses testified defendant was a good uncle and had a good relationship with T.N. The court also informed the jury about defendant's prior felony conviction; however, the court instructed the jury this conviction only affected defendant's credibility. The jury found defendant guilty on both counts.

In August 1997, the court denied defendant's posttrial motion for a new trial, which alleged (1) the State failed to reveal Christina threatened T.N. with a trip to the doctor before she disclosed the abuse; (2) the court erred in allowing evidence of his prior conviction; (3) the State's use of hearsay violated his right to confront the witnesses; and (4) the State failed to prove his guilt beyond a reasonable doubt. Thereafter, the court sentenced defendant. This appeal followed.

## II. ANALYSIS

### A. Right To Be Present

■ Defendant asserts his absence from the section 115—10 hearing violated his constitutional right to be present. He contends the section 115—10 hearing was a critical stage of the trial; thus, his failure to knowingly waive his right to be present requires reversal of his conviction. See *People v. Collins*, 184 Ill. App. 3d 321, 334-35, 539 N.E.2d 736, 744-45 (1989).

The State contends defendant's failure to raise this issue before the trial court and in his posttrial motion forfeited his right to raise it on appeal. See *People v. Pasch*, 152 Ill. 2d 133, 168, 604 N.E.2d 294, 307 (1992). Further, the State asserts plain error did not occur because the fairness of defendant's trial was not undermined by his absence from the section 115—10 hearing. See *People v. Bean*, 137 Ill. 2d 65, 80, 560 N.E.2d 258, 264-65 (1990).

At the outset of the section 115—10 hearing, the following dialogue took place:

"THE COURT: *** Mr. Barnes is here on behalf of the [d]efendant. Do we anticipate the [d]efendant's presence, counsel?

MR. BARNES: No your Honor. I didn't ask him to be brought over."

However, defense counsel may not waive defendant's right to be present unless evidence shows defendant voluntarily, knowingly, and intelligently waived his right. See *Collins*, 184 Ill. App. 3d at 335, 539 N.E.2d at 745. Here, the record does not support a finding of valid waiver. In fact, defense counsel's response implies he did not give defendant a choice to appear at the hearing. Under these circumstances, defendant did not provide an effective waiver. See *People v. Mallett*, 30 Ill. 2d 136, 142, 195 N.E.2d 687, 690 (1964).

A defendant is not denied a constitutional right every time he is not present during his trial; rather, his rights are violated when his absence results in a denial of an underlying substantial right, for example, the right to (1) confront the witness, (2) present a defense, or (3) an impartial jury. See *Bean*, 137 Ill. 2d at 81, 560 N.E.2d at 265. Here, defendant asserts his absence during the section 115—10 hearing violated his right to confront the witnesses (U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8) and his due process right (U.S. Const., amend. XIV, § 1). Consequently, we review this case under the plain error doctrine. See *People v. Stack*, 261 Ill. App. 3d 191, 196, 633 N.E.2d 42, 46 (1994).

### 1. *Confrontation Right*

■ The confrontation clause preserves defendant's right to cross-examine the witness. Cross-examination is the principal means for testing the veracity of witness testimony and is the "greatest legal engine ever invented for the discovery of truth." *Kentucky v. Stincer*, 482 U.S. 730, 736, 96 L. Ed. 2d 631, 641, 107 S. Ct. 2658, 2662 (1987). Thus, the court's objective is to strike a balance between the accuracy and integrity of the truth-seeking process versus the strong interest in effective law enforcement. See *People v. Bowen*, 183 Ill. 2d 103, 116, 699 N.E.2d 577, 585 (1998).

■ Rather than attempting to characterize a section 115—10 hearing as a critical stage, the court considers whether excluding defendant from the section 115—10 hearing interferes with his opportunity for effective cross-examination. See *Stincer*, 482 U.S. at 740, 96 L. Ed. 2d at 644, 107 S. Ct. at 2664. The ability to cross-examine prior to trial is not of "crucial significance" provided defendant has the opportunity for cross-examination during the trial. See *California v. Green*, 399 U.S. 149, 159, 26 L. Ed. 2d 489, 497, 90 S. Ct. 1930, 1935 (1970). As long as defendant's right to cross-examination at trial is secured, his confrontation right is not violated. See *People v. Keene*, 169 Ill. 2d 1, 12, 660 N.E.2d 901, 907 (1995).

In *Keene*, codefendant Hoover agreed to testify against codefendant Keene as part of a plea bargain. However, prior to testifying, Hoover moved to withdraw his guilty plea. As a result, the State sought, and was allowed, to question Hoover about his testimony outside the jury's presence to ensure he would testify as promised. Keene was excluded from the *voir dire*, but defense counsel was present. The supreme court held Keene's opportunity to cross-examine Hoover at trial was not interfered with; thus, Keene's confrontation right was not violated. See *Keene*, 169 Ill. 2d at 11-12, 660 N.E.2d at 907-08.

■ Here, defendant's absence from the section 115—10 hearing did not interfere with his right to cross-examine the hearsay witnesses at trial. Christina, Investigator Morgan, and T.N. all appeared and testified during the trial. When "the declarant is not absent, but is present to testify and to submit to cross-examination, *** the admission of his out-of-court statements does not create a confrontation problem." *Green*, 399 U.S. at 162, 26 L. Ed. 2d at 499, 90 S. Ct. at 1937. Defendant's opportunity to cross-examine these witnesses satisfied his confrontation right. See *People v. Thomas*, 178 Ill. 2d 215, 239, 687 N.E.2d 892, 903 (1997).

Defense counsel could have repeated any question heard during the section 115—10 hearing. See *Stincer*, 482 U.S. at 740-41, 96 L. Ed. 2d at 644, 107 S. Ct. at 2664-65. In fact, the section 115—10 hearing gave defendant the opportunity to review the witnesses' testimony prior to trial, thereby providing him with the chance for more effective cross-examination at trial. Thus, defendant's confrontation right was not violated.

### 2. *Due Process Right*

Defendant next asserts his absence from the section 115—10 hearing violated his due process right. See *Stincer*, 482 U.S. at 745-46, 96 L. Ed. 2d at 647-48, 107 S. Ct. at 2667-68. He argues the section 115—10 hearing bore a substantial relationship to his opportunity to defend himself. *Cf. Collins*, 184 Ill. App. 3d at 335, 539 N.E.2d at 745. Consequently, his absence from this critical stage affected the fairness of the trial. See *Bean*, 137 Ill. 2d at 83, 560 N.E.2d at 265.

■ Due process requires the defendant be present " 'to the extent that a fair and just hearing would be thwarted by his absence.' " *Stincer*, 482 U.S. at 745, 96 L. Ed. 2d at 647, 107 S. Ct. at 2667, quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108, 78 L. Ed. 674, 679, 54 S. Ct. 330, 333 (1934). The right to be present originates in the due process clause and is not an absolute right. "Thus, as long as a defendant's absence from a portion of his trial does not deprive him of

due process, there is no violation of [his] *** right of presence ***."
*Bean*, 137 Ill. 2d at 83, 560 N.E.2d at 266.

Defendant argues the section 115—10 hearing involved the admission of substantive evidence; therefore, his presence at the hearing was necessary. See *Collins*, 184 Ill. App. 3d at 335, 539 N.E.2d at 745. In *Collins*, the court heard defendant's motion to suppress evidence, during which defendant was excused from the courtroom. Before he was excused, the court informed defendant no further evidence would be heard. However, the court heard evidence, including defense counsel's cross-examination of the police officer who investigated defendant, questioned him, and obtained his partial confession. See *Collins*, 184 Ill. App. 3d at 334-35, 539 N.E.2d at 744-45.

The *Collins* court held the hearing involved important evidence for the State's case against defendant, thereby involving defendant's substantial rights. Further, defendant's waiver of his right to be present was invalid due to the court's misleading statement. Thus, his absence from the hearing violated his right to be present. See *Collins*, 184 Ill. App. 3d at 335-36, 539 N.E.2d at 745.

■ In contrast to *Collins*, the State bore the burden of proof during the section 115—10 hearing. See *People v. Zwart*, 151 Ill. 2d 37, 43, 600 N.E.2d 1169, 1171-72 (1992). Further, unlike the defendant in *Collins*, defendant was not present when T.N.'s allegations were made to her mother and the police investigator; therefore, the impact his presence may have had on the outcome of the hearing is speculative. Here, the record fails to show what effect, if any, defendant's presence would have had on the accuracy and integrity of the truth-seeking process. See *Stincer*, 482 U.S. at 747, 96 L. Ed. 2d at 648, 107 S. Ct. at 2668; *Keene*, 169 Ill. 2d at 13, 660 N.E.2d at 908.

Because of the importance of section 115—10 hearings, however, we conclude defendants have a due process right to be present at these hearings. In some child sex abuse cases, hearsay testimony may be the only evidence supporting the victim's allegations. The outcome of the section 115—10 hearing is potentially the most important determination during the case and bears a substantial relationship to defendant's ability to establish a defense. While we acknowledge defendant's presence during this hearing may have had no effect on the outcome of this case, the significance of the hearing warranted his presence, unless he voluntarily, knowingly, and intelligently waived this right. See *People v. Martine*, 106 Ill. 2d 429, 438-39, 478 N.E.2d 262, 266 (1985).

In rare circumstances not present in this case, the absence of a defendant at a section 115—10 hearing may be permissible. Occasionally, in child sex abuse cases, the trauma suffered by the child-victim is too

great for the child to testify in front of the defendant without causing additional harm. However, the intent behind a section 115—10 hearing is to test the reliability of a child-victim's hearsay statements, and the most persuasive evidence may be his or her own testimony. Because defendant's right to be present arises under the due process clause, the trial court must balance defendant's role in assisting in his defense against the risk of identifiable and substantial injury to the child. See *Stincer*, 482 U.S. at 746 n.20, 96 L. Ed. 2d at 648 n.20, 107 S. Ct. at 2668 n.20.

Unlike defendant's confrontation right at trial under the Illinois Constitution (see Ill. Const. 1970, art. I, § 8; *People v. Fitzpatrick*, 158 Ill. 2d 360, 367, 633 N.E.2d 685, 688 (1994)), defendant's due process right to be present is not unequivocal during section 115—10 hearings. If the State, as the proponent of the hearsay statement's reliability, establishes by a preponderance of the evidence the trauma to the child-victim outweighs the defendant's ability to assist counsel, then the defendant may be excused from the courtroom during the child's testimony without violating the defendant's due process right.

Here, the court did not weigh defendant's right and defendant did not waive his right to be present during the section 115—10 hearing. Accordingly, defendant's absence violated his due process right (U.S. Const., amend. XIV, § 1), thereby amounting to plain error (134 Ill. 2d R. 615(a)). We conclude the evidence was sufficient to find defendant guilty beyond a reasonable doubt; therefore, defendant faces no risk of double jeopardy on retrial. See *People v. Cruz*, 162 Ill. 2d 314, 374, 643 N.E.2d 636, 664 (1994).

Because we reverse based on a violation of defendant's due process right, we need not address the argument he received ineffective assistance of counsel. Nevertheless, we address several of defendant's arguments based on the likelihood they will be raised during the new trial.

### B. Hearsay Evidence

Defendant contends the admission of T.N.'s hearsay statements violated his right to confront the witness (U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8). He asserts section 115—10 is not a firmly rooted exception to the hearsay rule; so, admission of T.N.'s out-of-court statements denied him his right to confront the witness. See *People v. Peck*, 285 Ill. App. 3d 14, 26-27, 674 N.E.2d 440, 449 (1996) (Cook, J., specially concurring), citing *Idaho v. Wright*, 497 U.S. 805, 816, 111 L. Ed. 2d 638, 652, 110 S. Ct. 3139, 3147 (1990).

■ In *Wright*, the court held incriminating hearsay statements must bear adequate indicia of reliability to be admitted. Reliability can be demonstrated through a firmly established hearsay exception or by

showing particularized guarantees of trustworthiness. See *Wright*, 497 U.S. at 816, 111 L. Ed. 2d at 653, 110 S. Ct. at 3147. Thereafter, this court held section 115—10 incorporates the *Wright* criteria, thereby allowing courts to admit hearsay statements under section 115—10 without violating defendant's confrontation right. See *Peck*, 285 Ill. App. 3d at 23, 674 N.E.2d at 447.

■ This court specifically rejected the proposition the confrontation clause permits hearsay testimony only if it (1) falls within a firmly rooted exception or (2) is necessary because the declarant is unavailable to testify. See *Peck*, 285 Ill. App. 3d at 23, 674 N.E.2d at 447. Rather, so long as section 115—10's safeguards of reliability are satisfied, the hearsay statements are admissible without violating defendant's confrontation right. See also *Bowen*, 183 Ill. 2d at 117-18, 699 N.E.2d at 586.

Here, the court found sufficient indicia of reliability during the section 115—10 hearing. Accordingly, defendant's confrontation right was not violated and T.N.'s hearsay statements were properly admitted.

## C. Truth-In-Sentencing Provision

■ Defendant argues the trial court erred in applying the truth-in-sentencing provision to his sentence (see 730 ILCS 5/3—6—3(a)(2)(ii) (West 1996)). See *People v. Pitts*, 295 Ill. App. 3d 182, 190, 691 N.E.2d 1174, 1179 (1998). In *Pitts*, this court found Public Act 89—404 (Pub. Act 89—404, eff. August 20, 1995 (1995 Ill. Laws 4306, 4323-27)), which enacted section 3—6—3(a)(2)(ii) of the Unified Code of Corrections, violated the single subject rule of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 8(d)). See *Pitts*, 295 Ill. App. 3d at 190, 691 N.E.2d at 1179. Thus, he asserts the court may not apply section 3—6—3(a)(2)(ii) to his sentence, if he should be convicted again.

Recently, the Supreme Court of Illinois also found Public Act 89—404 violated the single subject rule (Ill. Const. 1970, art. IV, § 8(d)). See *People v. Reedy*, 186 Ill. 2d 1, 12 (1999). The court further stated Public Act 90—592 (Pub. Act 90—592, § 5, eff. June 19, 1998 (1998 Ill. Legis. Serv. 1429, 1430 (West))), which both deleted and recodified the entire truth-in-sentencing legislation, was the only curative legislation enacted by the General Assembly (*Reedy*, 186 Ill. 2d at 16), thus overruling *sub silentio People v. Nicholson*, 299 Ill. App. 3d 256, 267-68, 701 N.E.2d 517, 525-26 (1998) (concluding Public Act 89—462, § 280, eff. May 29, 1996 (1996 Ill. Laws 588, 655-58) was curative legislation). Accordingly, because defendant's crime was allegedly committed before June 19, 1998, the court may not apply the truth-in-sentencing provision. See *Reedy*, 186 Ill. 2d at 17.

### III. CONCLUSION

For the reasons stated, we reverse defendant's conviction and remand for a new trial.

Reversed and remanded.

MYERSCOUGH, J., concurs.

JUSTICE COOK, specially concurring:

I disagree with the *dicta* that in some cases the absence of a defendant at a section 115—10 hearing may be permissible (303 Ill. App. 3d at 848-49). In my view, the defendant is entitled to be present at a section 115—10 hearing to the same extent that he is entitled to be present during the taking of evidence at a trial. In many child sex abuse cases, section 115—10 hearsay may be the only evidence supporting the victim's allegations. At the section 115—10 hearing, no one can know with certainty whether the alleged victim will be called or be able to testify at trial. The section 115—10 hearing is an important stage of the case against the defendant, unlike a pretrial hearing where only legal arguments are made. In *Stincer*, defendant was excluded from a pretrial competency hearing for two child victims of sex abuse, but the court there stressed that the questions asked did not relate to the crime itself, but to general capacity to tell the truth. See W. LaFave & J. Israel, Criminal Procedure § 24.2, at 1011-12 (2d ed. 1992).

Finally, I stand by my special concurrence in *Peck*, that compliance with section 115—10 does not automatically satisfy constitutional requirements.