*In re* MARRIAGE OF MARTHA J. ALSHOUSE, Petitioner-Appellee, and
MERRILL A. ALSHOUSE, Respondent-Appellant.

Third District   No. 3—93—0245

Opinion filed January 20, 1994.

Douglas B. Olivero, of Peru, for appellant.

Thomas A. Tonozzi, of Spring Valley, for appellee.

JUSTICE LYTTON delivered the opinion of the court:
Merrill A. Alshouse appeals from an order of the circuit court of Bureau County awarding his former wife, Martha J. Alshouse, a portion of his pension benefits in the sum of $83,000. He asserts that the following rulings were erroneous: (1) the valuation of Martha's interest at $83,000; (2) the denial of his motion to vacate the trial court's order; and (3) the award of attorney fees to Martha in the sum of $2,600. We affirm.

## PENSION BENEFITS

Martha J. Alshouse filed a petition for dissolution of marriage against her husband, Merrill A. Alshouse, in the circuit court of Bureau County in April of 1982, and a judgment of dissolution was entered on July 1, 1982. The parties' phase II settlement agreement was incorporated into the judgment of dissolution on May 20, 1983, including a provision that the determination of the value of Martha's interest in Merrill's pension plan would be reserved until his retirement. That particular provision was as follows:

"The parties further agreed the value of [Martha's] interest in [Merrill's] pension plan at Northern Illinois Gas Company, if any, shall be reserved until [his] retirement based on his marital and non-marital contribution to said plan. Items to be considered in the formula to arrive at the value of the pension plan are the dates of employment of [Merrill] with his employer on February 9, 1958, the date of marriage of November 25, 1961, the date of dissolution of July 1, 1982, the total years of non-

marital contributions and the date of retirement all to be considered in arriving at some type formula to be used in calculating the marital value of the pension, if any, at the time of retirement."

Merrill retired on July 1, 1990, at age 60 and elected to receive his retirement benefits in a lump sum payment of $220,875. Martha filed a motion on August 7, 1990, requesting the court to determine the value of her interest in the pension plan.

At the hearing on Martha's motion, Merrill's expert witness, John C. Whitney, a consulting actuary employed by the firm that prepared the pension plan in question, testified that at the time of the divorce in 1982, Merrill was entitled to a monthly benefit of $732 at age 65 which would require $57,075 to be fully funded by the company. He stated that the present value of the plan on July 1, 1982, was $33,000, while on July 1, 1990, the value of the $732-per-month benefit was $57,000.

Whitney explained that the lump sum benefit of $220,000 was the present value of the $1,794 monthly benefit to which Merrill was entitled beginning July 1, 1990, at age 60. The increase in monthly benefit from 1982 to 1990 was attributable to additional years of service, increases in pay, and changes in the pension plan adopted by the employer in 1984.

Martha's expert witness, F.J. Martinaitis, a certified public accountant, also testified that, as of July 1, 1982, Merrill would be entitled to a monthly pension benefit of $732 when he reached age 65. Using a life expectancy of 16.9 years, the witness concluded that in 1990 the present value of that benefit was $57,000.

Martinaitis also testified to an alternative method of computation using the formula approved in In re Marriage of Hunt (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511, where the court held that the marital portion of the pension is computed by multiplying the present value of the pension benefit by a fraction whose numerator is the number of months of marriage during which benefits were being accumulated and whose denominator is the total number of months of employment during which benefits were accumulated. This computation produces a marital portion of $145,483 to which the witness added interest of $19,009 to arrive at a total value of $164,492.

After the hearing, the court used the formula set forth in Hunt to find that Martha's 50% share, including interest from the date of Merrill's retirement to October 31, 1992, was $82,246. Since Merrill had continued to earn interest on the pension benefit during the five

months since the interest was first computed, the trial court "rounded off" Martha's share to $83,000.

Merrill contends that the court erred in determining the value of the marital portion of the pension plan on the basis of the formula used in the *Hunt* case rather than adopting the valuation testified to by his expert witness. Merrill argues that the court improperly awarded Martha the benefit of the additional years worked, the increases in earnings occurring after the dissolution, and the changes in the pension plan, all of which contributed to the increased value of the pension. In effect, Merrill is saying that Martha's interest in his pension benefits should have been "frozen" as of the date of dissolution and that she should not be allowed to realize any of the growth in value of the marital share occurring during the eight years of Merrill's employment after the divorce and before his retirement.

At the time of the dissolution of their marriage, the parties expressly agreed that the formula used to determine the value of the pension plan was to include the date of Merrill's employment, the date of his retirement, and the total years of nonmarital contributions as well as the date of marriage and the date of dissolution. Merrill's computation does not take into account the date of retirement or the total years of nonmarital contributions.

■ The *Hunt* formula used by the trial court has been widely accepted by Illinois courts. (See *People v. Davis* (1991), 215 Ill. App. 3d 763, 773, 576 N.E.2d 44, 51; *Helber v. Helber* (1989), 180 Ill. App. 3d 507, 509, 536 N.E.2d 110, 111.) The trial court has broad discretion in the valuation and distribution of marital assets, and absent an abuse of that discretion whereby no reasonable person could adopt the court's position, the reviewing court will not substitute its judgment for that of the trial court. (*In re Marriage of Benz* (1988), 165 Ill. App. 3d 273, 286, 518 N.E.2d 1316, 1322.) Here the valuation determined by the trial court was within the range testified to by Martha's expert witness and, therefore, was not an abuse of discretion. See *In re Marriage of Hunter* (1992), 223 Ill. App. 3d 947, 956, 585 N.E.2d 1264, 1271.

### MOTION TO VACATE

Merrill also asserts that the trial court's denial of his motion to vacate the judgment entered on March 2, 1993, was error. A detailed review of the proceedings leading up to the motion to vacate must be set forth to better understand the issue before the trial court.

A hearing on the motion for determination of Martha's interest in the pension plan was first set for August 10, 1990. Thereafter, the

common law record discloses some eight continuances, six of which are identified as being at the request of Merrill, prior to a hearing on the merits held on December 16, 1992.

After some evidence was presented, the cause was continued by the court to March 2, 1993, for additional evidence concerning the dollar amounts contributed to Merrill's pension by the employer and/or the employee. A few days before March 2, Merrill's attorney filed a motion for a continuance "on the ground that additional time is needed because the requested transcript cannot be typed by the court reporter." No supporting affidavit accompanied the motion. On March 1, Merrill's attorney, Douglas Olivero, filed a notice setting a hearing "on all pending matters" for April 6, 1993.

On March 2, Martha and her attorney, Thomas Tonozzi, appeared before the trial judge, but Merrill and his attorney were not present. The trial judge noted the motion for continuance in the file and asked whether Martha had any objection to a further postponement. Tonozzi stated that he had not agreed to any continuance, that Martha had waited nearly three years for her portion of the pension benefit, that she had objected to previous continuances, and that she would like a decision. The court then denied the motion to continue.

Tonozzi then informed the court that Merrill's pension was entirely funded by his employer, and since it was a defined benefit plan, the employer's contribution was based upon its total obligation each year. No amount per employee per year could be computed. Thus, no additional substantive evidence would be presented. As described above, the court ruled that Martha's share was $83,000.

On March 8, 1993, a judgment order was signed and filed which included findings that Merrill's motion for continuance was not heard and the hearing was not continued, that no transcript had been ordered by Olivero, that the cause had been continued several times over Martha's objection, that Merrill is well able to pay Martha's attorney fees, that attorney fees of $2,600 are reasonable, and that the fair and reasonable interest of Martha in Merrill's pension is $83,000.

Olivero promptly filed a motion to vacate the judgment, asserting that he had ordered a transcript of the December 16 hearing but was informed by the court reporter that she was ill and could not prepare the transcript by the March 2 hearing date; further, some personnel in Tonozzi's office had agreed to continue the hearing and his failure to appear resulted from his reliance upon that agreement. The motion to vacate was accompanied by affidavits of Olivero and two of his secretaries detailing various telephone calls made to the court reporter and to Tonozzi's secretaries.

At the hearing on the motion to vacate, Tonozzi denied making any agreement to continue the March 2 hearing, pointing out that the last three or four continuances had been granted over his objection. The court reporter indicated that, on February 25, Olivero had merely asked her what the cost of a transcript would be, but she did not receive a written request for the transcript until March 17, 1993, after judgment had been entered in Martha's favor.

The trial court stated that a transcript is never prepared without a request in writing and no such written request was made; furthermore, a hearing cannot be continued "unilaterally" by the filing of a motion and notice setting it for hearing after the date of the hearing to be continued. The court also said that a continuance "by agreement" would not be accepted unless it was in writing and signed by both attorneys. The trial judge noted that Merrill "had his day in court," but he waived his right to his final argument when he failed to appear. The judge then denied the motion to vacate.

■ On appeal, Merrill argues that the trial court erred in refusing to recognize that his failure to appear at the hearing was in reliance on Tonozzi's agreement to a continuance. The trial court asked Olivero to document his assertion of an agreement, and he could not do so. Tonozzi denied that he had agreed to a continuance. We conclude that the trial court did not err in finding that no agreement to continue was reached.

Merrill also contends that the denial of the motion to vacate the March 2 judgment was error because it was a default judgment which should be vacated as a matter of course. Since virtually all the evidence had already been heard, the procedure followed by the trial court was an *ex parte* hearing of closing argument prior to entry of judgment, not a default judgment. See *Teitelbaum v. Reliable Welding Co.* (1982), 106 Ill. App. 3d 651, 658-59, 435 N.E.2d 852, 858.

When we review a trial court's decision to proceed with a hearing after denying a motion to continue, the overriding consideration is whether the ends of justice have been served. (*People ex rel. Reid v. Adkins* (1971), 48 Ill. 2d 402, 406, 270 N.E.2d 841, 843; *Baltz v. McCormack* (1978), 66 Ill. App. 3d 76, 78, 383 N.E.2d 643, 644.) Here, counsel's failure to appear or to file a proper motion for continuance demonstrated a lack of due diligence. The court in *Teitelbaum* found that "it would be completely unreasonable and not in the interest of substantial justice under the record" to remand the case to the trial court. (*Teitelbaum*, 106 Ill. App. 3d at 659, 435 N.E.2d at 258.) In the case before us, we believe it would be an unreasonable burden under these facts to require Martha to go back to the trial court so that

Olivero can make his closing argument. We hold that justice was served by denial of the motion to vacate.

### ATTORNEY FEES

At the March 2 hearing, Tonozzi also asked for an award of attorney fees as requested in the original motion to determine her interest in Merrill's pension. He advised the court that he had spent 26 hours on this cause, his customary charge was $100 per hour, and the cause had been repeatedly continued by his opponent. An award of $2,600 was granted in favor of Martha.

Merrill contends that the trial court erred in awarding attorney fees to Martha without a sworn statement of hours expended or services provided by counsel and with no finding of the parties' respective abilities to pay, as required by section 508 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508 (West 1992)). But the trial judge here also entered the original judgment of dissolution and the phase II order. As a result, we can assume he was advised of the financial resources of the two parties, was familiar with the legal services provided by Martha's attorney, and, moreover, was fully aware of the number of continuances attributable to Merrill.

■ On review of an award of attorney fees, this court has held that the question is whether the trial court acted arbitrarily, without using conscientious judgment, or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law. (*In re Marriage of Plotz* (1992), 229 Ill. App. 3d 389, 393, 594 N.E.2d 366, 369.) After a careful review of the record, we conclude that the trial court properly considered all of the attendant facts and acted reasonably under the circumstances. The award of attorney fees was not erroneous.

For the reasons stated, we affirm the judgment of the circuit court of Bureau County.

Affirmed.

BRESLIN and STOUDER, JJ., concur.