2021 IL App (1st) 0452-U
No. 1-21-0452

FIRST DIVISION
February 7, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| FIDEL MARQUEZ, JR., | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Domestic |
| Petitioner-Appellant, | ) | Relations Division. |
| | ) | |
| v. | ) | No. 2014 D 000669 |
| | ) | |
| VICTORIA J. MARQUEZ, | ) | The Honorable |
| | ) | Mary S. Trew, |
| Respondent-Appellee. | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Hyman and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's findings that Petitioner-Appellant failed to comply with the terms of the Judgment of Dissolution of Marriage between himself and Respondent-Appellee, as well as the court's order requiring him to comply with that judgment by distributing 55% of the restricted and performance stock units to Respondent-Appellee as per the terms of the judgment. The stock units, regardless of whether they were vested or non-vested, were found to be marital property that the circuit court could properly order Petitioner-Appellant to distribute pursuant to 750 ILCS 5/503(b)(3).

¶ 2    Petitioner-Appellant Fidel Marquez, Jr. ("Fidel") appeals from the circuit court's order that he comply with the terms of the Judgment of Dissolution of Marriage ("Judgment") between himself and Respondent-Appellee Victoria J. Marquez ("Victoria") and distribute certain stock

shares to Victoria as per the Judgment. The circuit court found that that he failed to comply with the Judgement by failing to transfer 55% of his Restricted Stock Units ("RSUs") and Performance Stock Units ("PSUs") (collectively, "stocks") to Victoria. Fidel argues that these stocks were the property of his employer, and not his own property, at the time of the Judgment, and would not vest to him unless he continued his employment after the Judgment date, and that when they did vest to him, it was to an account that he was awarded in the Judgment. He seeks a ruling that the circuit court abused its discretion in finding otherwise, and its order was against the manifest weight of the evidence. For the following reasons, we affirm the circuit court's order.

¶ 3                                   BACKGROUND

¶ 4     The domestic relations division of the circuit court of Cook County entered a Judgment for Dissolution of Marriage in the marriage of Fidel and Victoria on December 16, 2015. The Judgment identifies the marital and non-marital property of the parties at the time of the Judgment and dictates how it was to be divided between them. This includes several stock interests that, according to the Judgment, belonged to Fidel based on his employment with Commonwealth Edison (Exelon) ("ComEd/Exelon") as of the date of the Judgment. The list of stock interests includes, among others, Exelon Restricted Stock Units and Exelon Performance Share Stock Units. Pursuant to the Judgment, Fidel and Victoria were to receive 45% and 55%, respectively, of what the Judgment refers to as the Marital Portion of all stock and non-stock benefits mentioned in that section of the Judgment.

¶ 5     The portion of the Judgment that governs the division of marital assets comprised of stocks and other incentive compensation states in part:

> It is understood and acknowledged that the Husband is required to maintain certain shares of stock and certain other assets as a requirement of his employment. Thus, the Wife shall receive her portion of the stock and other assets as set forth above at the time the Husband sells, trades, transfers, liquidates or otherwise disposes of his interest in said stock or other

assets, or at such time as the Husband is no longer required to maintain said stock as a requirement of his employment, whichever is first to occur.

This provision includes further instructions for the apportionment of the marital stock property:

The Marital Portion of the stock and non-stock incentive compensation shall be determined by one of the following methods:

- The formula used by the Appellate Court in the Wisniewski II case (In re Marriage of Wisniewski, 675 N.E.2d 1362, 286 Ill.App.3d 236 (Ill. App. 4 Dist., 1997)).
- Some other method that provides for the definition of the Marital Portion that is equitable to both parties in light of the plan or program at issue and other relevant circumstances regarding the stock at issue.

Therefore, the Judgment contains two possible methods for determining whether or what portion of the RSU and PSU was the Marital Portion, and provides instructions for the future, post-Judgment distribution of some portion of Fidel's stock interests to Victoria.

¶ 6     Fidel retired and ceased his employment with ComEd/Exelon in October of 2019. The unvested shares of Exelon stock identified in the Judgment have therefore since vested, and Fidel testified as such in a hearing before the circuit court on March 22, 2021. On September 29, 2020, Victoria filed a Petition for Adjudication of Indirect Civil Contempt, alleging that Fidel had violated the terms of the Judgment by failing to transfer 55% of the marital shares of his Exelon RSUs and PSUs to his ex-wife at the time that he was no longer required to maintain the stock as a condition of his employment, pursuant to the terms of the Judgment. Fidel filed a cross-petition for indirect civil contempt and a rule to show cause for Victoria's alleged failure to comply with a different provision of the Judgment that is not a topic of this appeal. Both parties gave testimony before the circuit court at a hearing on the cross-petitions on March 22, 2021.

¶ 7     Fidel and Victoria are in agreement that under the terms of the Judgment, 55% of the marital portion of the stock interests identified in the Judgment was awarded to Victoria upon the dissolution of their marriage. They further agree that, in a different section of the Judgment, a

certain Morgan Stanley trust account ("Account"), identified by its ending numbers, was awarded solely to Fidel as non-marital property in which Victoria had no ownership interest. Fidel testified that at the time of the entry of the Judgement, there existed 11,128,879 shares of RSUs and 12,061 shares of PSUs, which were held in the Account; however, he disputes that the shares were part of the marital property.[1] He claims that, at the time of the Judgment, the unvested shares were the property of his employer, ComEd/Exelon, because he would not have been eligible to receive the shares if he did not continue his employment with ComEd/Exelon for some period of time. He further claims that the shares could never become marital property, because once the shares vested to him, they went into the Account that he was awarded in the Judgment, therefore bypassing any opportunity to become part of the marital property.

¶ 8    Victoria argues that the RSUs and PSUs were never part of the Account. She supported this position before the circuit court by submitting a document from Morgan Stanley listing Fidel's stock plan. The document lists the RSUs and PSUs on separate lines from the Account, which is included at the end of the document in a section labeled Morgan Stanley Wealth Management Accounts. Fidel's theory was that as the stock became vested, it went into the Account, thus moving from nonmarital property because it was owned by his employer, to nonmarital property upon vesting because it went into an account that was his individual property.

¶ 9    At the March 22, 2021 hearing, the circuit court did not find Fidel's theory convincing, stating that it rendered the Judgment illusory and possibly nonsensical; the court read the Judgment to be unambiguous in awarding the approximately $179,807.98 that existed in the Account at the time of the Judgment to Fidel, and dividing the RSUs and PSUs between Fidel and Victoria 45%

---

[1] Victoria states that Fidel has admitted that there were 11,128,879 marital shares of RSUs and 12,061 marital shares of PSUs; however, while Fidel admitted to these amounts of RSUs and PSUs, he did not claim that these were marital shares.

and 55%, respectively. The court found that it would be nonsensical for the Judgment to award a portion of the RSUs and PSUs to Victoria and then award all vested amounts of Fidel's stock interests to Fidel. While the court did not find Fidel's actions in withholding the property rose to the level of willful and contemptuous, and declined to make a finding of contempt, it did order him to distribute 55% of the stocks, or an equivalent amount based on the market value of those stocks, to Victoria, and ordered counsel for the parties to determine the precise amount. Fidel now appeals from that decision. He argues that the circuit court abused its discretion in ordering Fidel to distribute 55% of his shares of RSU and PSU to Victoria, that the circuit court's finding that Fidel failed to comply with the Judgment by not transferring the RSUs and PSUs was against the manifest weight of the evidence, and that the circuit court improperly modified the Judgment contrary to Section 502(f) of the Act by awarding Victoria 55% of the stock shares.

¶ 10                                    ANALYSIS

¶ 11     The Illinois Marriage and Dissolution of Marriage Act ("Act") instructs the court to "make specific factual findings as to its classification of assets as marital or non-marital property, values, and other factual findings supporting its property award." 750 ILCS 5/503(a) (West 2020). The court's determination of marital and nonmarital property shall not be disturbed on appeal unless it is contrary to the manifest weight of the evidence. *In re Marriage of Lundahl*, 396 Ill.App.3d 495, 504 (1st Dist. 2009); *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 49. A decision is against the manifest weight of the evidence "only when an opposite conclusion is clearly apparent or when the court's findings appear to be unreasonable, arbitrary, or not based upon the evidence." *Stuhr*, 2016 IL App (1st) 152370, ¶ 49 (quoting *In re Marriage of Faber*, 2016 IL App (2d) 131083, ¶ 3.

¶ 12     Section 503(b)(3) of the Act governs the distribution of stock options and related assets that are included in the marital property, and states in relevant part:

The court shall allocate stock options and restricted stock or similar form of benefit between the parties at the time of the judgment of dissolution of marriage or declaration of invalidity of marriage recognizing that the value of the stock options and restricted stock or similar form of benefit may not be then determinable and that the actual division of the options may not occur until a future date. In making the allocation between the parties, the court shall consider, in addition to the factors set forth in subsection (d) of this Section, the following:

> (i) All circumstances underlying the grant of the stock option and restricted stock or similar form of benefit including but not limited to the vesting schedule, whether the grant was for past, present, or future efforts, whether the grant is designed to promote future performance or employment, or any combination thereof.
> (ii) The length of time from the grant of the option to the time the option is exercisable.

750 ILCS 5/503(b)(3) (West 2020).

¶ 13    The Act clearly allows for stock options to be classified and divided up as marital property even when the value of those options is unknown and the distribution of those stock options between the parties will occur after the judgment of dissolution of marriage. 750 ILCS 5/503(b)(3) (West 2020). Indeed, the Judgment in this matter includes language recognizing this as well. If Fidel is correct that the circuit court found that property of his employer—the unvested RSUs and PSUs—was part of the marital property, that would render this provision of the Act meaningless, as it would imply that only vested stock interests could be considered marital property. We will not issue a decision that would require us to read a statute in a way that would render any section of it meaningless. *See Collins v. Board of Trustees of Firemen's Annuity & Ben. Fund of Chicago*, 155 Ill.2d 103, 111 (Ill. 1993).

¶ 14    Additionally, as our supreme court has explained, we have found a former spouse's unvested stock interests to properly be included as marital property in a marriage dissolution action, if there is evidence presented as to the value of those shares, even where those stock benefits may never be received by the former spouse, such as when they are contingent upon continued employment. *See In re Marriage of Evans*, 85 Ill.2d 523, 526-31 (Ill. 1981); *see also In re*

*Marriage of Peters*, 326 Ill.App.3d 364, 371 (2d Dist. 2001) (The trial court should use the reserved-jurisdiction approach in dividing the husband's potential stock bonus, but retaining jurisdiction to later determine how much of the bonus was attributable to the husband's efforts during the marriage, if he ever received the bonus.) The circuit court in the present matter included in its ruling instructions that counsel for both parties determine the then-current market value of all of the RSUs and PSUs, in order to divide the stock property between the parties in the proportions of 45% and 55%.

¶ 15     Fidel is correct in stating that the Judgment establishes the Account in which Fidel claims his Exelon RSUs and PSUs were held was awarded to Fidel as his individual, non-marital property. The Judgment further identifies that Fidel had certain Exelon stock interests at the time of the dissolution of marriage, and acknowledges that some of those interests would vest at a future, post-Judgment date because Fidel was required to maintain those shares while employed with ComEd/Exelon. While it is clear that some portion of Fidel's stock interests that constituted marital property would be split between Fidel and Victoria 45% and 55%, respectively, the determination of marital property was not provided for in the Judgment; rather, it lists two methods by which the marital property should be divided—the formula used by the Appellate Court in *In re Marriage of Wisniewski* or some other equitable method agreed upon by the parties. The Judgment does not include guidance on how to handle interrelated sections, if any, as would be relevant under Fidel's argument that the RSUs and PSUs are part of a trust account that the circuit court awarded to him and him alone, not to be divided with Victoria.

¶ 16     Furthermore, in *In re Marriage of Wisniewski*, the Appellate Court reviewed the trial court's utilization of the proportionality rule, under which each party's interest in the ex-husband's pension benefits was equal to the total pension benefit times the ratio of years of marriage in which

there was participation in the plan to total years of participation in the plan. 286 Ill.App.3d 236, 240 (4th Dist. 1997). The issue in that case was the method of apportionment to use in dividing what the parties already agreed was marital property. The Judgment in the present matter, therefore, provides instruction on how to apportion marital property, but not how to determine whether an asset is marital property in the first place, which is what the parties dispute here.

¶ 17    The record indicates that the circuit court made a finding that the Exelon RSUs and PSUs listed in the Judgment were part of what the Judgment calls the Marital Portion of Fidel's stock interests, and in doing so, rejected Fidel's theory that they bypassed any opportunity to be marital property because they were owned by his employer at the time of the Judgment, and later passed directly into the Account that he owned individually. While the court does not go into detail describing the basis for its finding, it does provide support for its reasoning by explaining why a finding in favor of Fidel's theory would be nonsensical. We do not find there to be any basis in the record for overturning the circuit court's determination as being against the manifest weight of the evidence.

¶ 18    Regarding Fidel's argument that the vested stocks were part of the Morgan Stanley trust account that was awarded to him in the Judgment, we further find no reason to disrupt the circuit court's findings that the Judgment was neither contradictory nor ambiguous in awarding Fidel the contents of the Account at the time of the Judgment, but not the RSUs and PSUs. It is unclear whether the Morgan Stanley document showing Fidel's stock plan establishes that the RSUs and PSUs were part of the Account; Fidel and Victoria argue for opposing conclusions based on the same evidence. The circuit court appears to have agreed with Victoria that the stocks were not part of the Account that was awarded to Fidel alone. We find that the court's determination was not contrary to the manifest weight of the evidence. Furthermore, just as a court will not interpret a

contract in a way that would nullify or render meaningless any portion of the agreement, we will not read the Judgment to provide for the possibility of dividing the RSUs and PSUs as marital property, but then render that possibility entirely inapplicable under the circumstances. *See Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Company*, 2017 IL App (1st) 162808, ¶ 38.

¶ 19 Finally, we find Fidel's argument that the circuit court improperly modified the terms of the Judgment to be without merit. Fidel alleges that the circuit court ignored Section 502(f) of the Act, which prohibits modification of property provisions of the marriage dissolution agreement by ordering the division of property that Fidel claims was not part of the marital property. *See* 750 ILCS 5/503(f) (West 2020). For the reasons stated above, we affirm the court's findings that the stock options were part of the marital property, and the circuit court's order was not contrary to the terms of the Judgment.

¶ 20                                                  CONCLUSION

¶ 21 For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed

¶ 22 Affirmed.