**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200033-U

Order filed November 1, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0033 Circuit No. 15-CF-506 |
| | ) | |
| MICTAVIUS T. ROSS, | ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HAUPTMAN delivered the judgment of the court.
Justices Daugherity and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The summary dismissal of defendant's *pro se* postconviction petition is affirmed where defendant's petition was frivolous and patently without merit.

¶ 2    Defendant, Mictavius T. Ross, appeals the Peoria County circuit court's summary dismissal of his postconviction petition. Defendant argues the court erred in dismissing his petition because it stated arguable claims of ineffective assistance of appellate counsel where counsel did not: (1) raise a *Batson* issue; (2) challenge the court's procedure that collapsed the

*Batson* inquiry; and (3) raise trial counsel's ineffectiveness for failing to challenge the jury as not being drawn from a fair cross-section of the community. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In 2015, the State charged defendant by indictment with one count of attempted armed robbery (720 ILCS 5/8-4(a), 18-2(a)(2) (West 2014)), three counts of home invasion (*id.* § 19-6(a)(3)-(5)), and one count of aggravated battery (*id.* § 12-3.05(e)(1)). Defendant's case proceeded to a jury trial in June 2016.

¶ 5        During jury selection, the State exercised a peremptory challenge to excuse an African American juror, James Jordan, who was part of the first 12 venire members called to the jury box for *voir dire*. In chambers, defense counsel objected to Jordan's dismissal and raised a *Batson* challenge. The parties agreed that both defendant and Jordan were African American and that, at a glance, only 2 of approximately 35 prospective jurors in the jury pool were African American. The court explained that defense counsel needed to establish a *prima facie* case of purposeful discrimination, sufficient to allow the court to draw an inference that discrimination had occurred, thereby shifting the burden to the State to provide a race-neutral explanation for excusing the juror. Defense counsel responded:

> "Well, I can tell you that it seemed to me that excusing one out of two
> with a group of 35 essentially is almost *prima facie*. The proposed juror had a
> nephew who had some criminal background that is not close to, didn't even know
> how old he was. Had a brother who was a victim of a murder, that went to trial
> and the person was convicted of murder. It seems to me and he has—he's mid-70s
> individual, born in 1942, is retired [from] the Department of Human Services

where he had employment in excess of 22 years. It seems to me that that would be someone that would likely be a juror typically accepted by a prosecutor."

¶ 6        The court responded that "We've only talked to four. [The State] hasn't talked to 35," and further remarked, "I am feeling you have fallen way short of proving your *prima facie* case," and

> "[defense counsel] has not shown me enough that would permit me to draw an inference of discrimination has occurred. And don't forget that potential juror, Jordan, is a lifetime Department of Human Services employee, and people draw inferences from that. I mean, not good or bad, but I mean about the kind of person that is."

¶ 7        When the parties returned to the courtroom, Jordan was excused. In total, 17 venirepersons were subject to *voir dire*, as the State and the defense each exercised one additional peremptory strike. At the close of jury selection, the following exchange occurred:

> "[DEFENSE COUNSEL]: *** Perhaps before that, simply reflect given our discussion in chambers about the excused juror, if the record could reflect that the—Mr. Jordan appeared to be the only African American that was called.
>
> [THE COURT]: Yes, the record of course will so reflect that there were two African Americans that I could see that were obviously African American and only one made it in the jury box, and he was removed by the State. Right?
>
> [DEFENSE COUNSEL]: Yes.
>
> THE COURT: Thank you. Anything to add to that, [State]?
>
> [THE STATE]: Other than he was one of two challenges I made, Judge.

THE COURT: That is right. And let me say, a second time, based on a first glance or a long glance, there a [*sic*] appeared to be—probably was only two, the odds are really high, there were only the two, but you never know. Right?

[DEFENSE COUNSEL]: Absolutely."

¶ 8        At the conclusion of the trial, the jury acquitted defendant of home invasion as charged in count II and found defendant guilty of the remaining charges. On July 29, 2016, defendant filed a motion for a new trial, arguing, *inter alia*, that the court "erred in refusing to inquire as to the peremptory challenge of prospective juror James Jordan pursuant to [*Batson*]." Defendant's motion for a new trial was summarily denied and defendant was sentenced to 30 years' imprisonment. On direct appeal, defendant argued exclusively that his conviction for home invasion as charged in count IV must be vacated under one-act, one-crime principles. *People v. Ross*, 2018 IL App (3d) 160478, ¶ 7. Defendant's appeal was dismissed for lack of jurisdiction. *Id.* ¶ 13.

¶ 9        On September 20, 2019, defendant filed a *pro se* postconviction petition pursuant to section 122-1 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018). In his petition, defendant argued, *inter alia*, that appellate counsel was ineffective for failing to challenge the circuit court's denial of defendant's *Batson* challenge during jury selection. Defendant also alleged that the "Court Errored On Not Having More Black Jurors In The Jury Pool." Defendant specifically asserted that the State violated the equal protection clause when it used a peremptory strike to remove one of the two potential African American jurors without proper justification.

¶ 10       The circuit court summarily dismissed defendant's petition via a written order filed on December 3, 2019. The court found defendant's petition to be frivolous and patently without

4

merit and described defendant's claims as vague, conclusory, and completely rebutted by the record. The court found that even if only 2 of the 35 prospective jurors were African American, this fact, standing alone, was insufficient to establish that the jury pool was improperly drawn. The court also concluded that "[w]ithout Defendant filing a challenge at the time of trial he has waived this issue and has nothing but broad conclusions to support his theory at this time." Defendant appeals.

¶ 11                                    II. ANALYSIS

¶ 12        On appeal, defendant argues the court erred in dismissing his *pro se* postconviction petition as it stated the gist of three ineffective assistance of appellate counsel claims. First, appellate counsel was ineffective for failing to raise a *Batson* argument. Second, appellate counsel was ineffective for failing to argue that the court improperly collapsed several stages of its *Batson* inquiry. Third, defendant argues that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in that trial counsel failed to challenge defendant's jury as not having been drawn from a fair cross-section of the community. The State argues that defendant's underlying *Batson* claim is meritless, defendant has forfeited review of whether the court improperly collapsed its *Batson* inquiry, and defendant's cross-section argument amounts to no more than speculation.

¶ 13                    A. Failure to Raise *Batson* Challenge on Direct Appeal

¶ 14        Turning to the postconviction proceeding, the Act offers criminal defendants a mechanism to mount a collateral attack on a final judgment by asserting that in the proceedings which resulted in his or her conviction, there was a substantial denial of his or her rights under the United States Constitution, the Illinois Constitution, or both. *People v. Clinton*, 2016 IL App (3d) 130737, ¶ 21; *People v. Robinson*, 2020 IL 123849, ¶ 42. The Act sets forth a three-stage

5

process for reviewing postconviction claims. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002); *Clinton*, 2016 IL App (3d) 130737, ¶ 21. At the first stage, the petition is subject to summary dismissal if the circuit court determines that the petition, on its face, is frivolous or patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009); 725 ILCS 5/122-2.1(a)(2) (West 2018). A petition is said to be frivolous or patently without merit where its allegations lack any arguable basis in either fact or law. *Hodges*, 234 Ill. 2d at 9. A petition lacks an arguable basis in fact when it is based on fanciful factual allegations belied by the record and lacks an arguable basis in law when it is based on an indisputably meritless legal theory, *i.e.*, a legal theory that is wholly contradicted by the record. *Id.* at 16-17. In making this legal determination, courts must keep in mind that the threshold for the survival of a petition is low and that allegations not contradicted by the record must be taken as true. *Id.* at 10. We review the circuit court's summary dismissal of defendant's petition *de novo. Id.* at 9.

¶ 15    The sixth amendment provides that litigants are entitled to the effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Claims of ineffective assistance of counsel on direct appeal are cognizable under the Act. *People v. Mack*, 167 Ill. 2d 525, 531 (1995) "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17. Appellate counsel's failure to raise a meritorious claim may result in the denial of a defendant's right to effective assistance, however, appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetent of counsel to refrain from raising meritless issues, unless counsel's appraisal of the merits is patently wrong. *People v. Easley*, 192 Ill. 2d 307, 329 (2000). Thus, unless the

underlying issue is meritorious, defendant suffers no prejudice from counsel's failure to raise it on appeal and cannot prevail on an ineffective assistance of appellate counsel claim. *Id.*

¶ 16    The equal protection clause forbids prosecutors from striking potential jurors based on race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). During *voir dire* in the instant case, defense counsel challenged the State's peremptory strike of Jordan, an African American male, pursuant to *Batson*. Counsel's challenge triggered a three-stage process wherein defendant was first required to make a *prima facie* showing that the totality of the relevant facts and all relevant circumstances surrounding the strike gave rise to an inference of a discriminatory purpose in the juror's dismissal. *Id.* at 91-97; *Johnson v. California*, 545 U.S. 162, 168 (2005); *People v. Davis*, 231 Ill. 2d 349, 360 (2008); see *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008) ("in reviewing a ruling claimed to be *Batson* error, all of the circumstances that bear upon the issue of racial animosity must be consulted."). If the challenging party makes a *prima facie* showing, the burden shifts to the challenged party to offer a race-neutral explanation for the dismissal. *Johnson*, 545 U.S. at 168.

¶ 17    The threshold for stating a *prima facie* claim under *Batson* is not high. *Davis*, 231 Ill. 2d at 360. Defendant may satisfy this first requirement by producing evidence sufficient to permit the circuit court to draw some inference that discrimination has occurred. *Id.* When reviewing the record to see if the facts suggest such an inference, a court must consider the totality of the circumstances. *Johnson*, 545 U.S. at 168. These circumstances may include: (1) the racial identity between the defendant and the excluded venireperson; (2) a pattern of strikes against African American venirepersons; (3) a disproportionate use of peremptory challenges against African American venirepersons; (4) the level of African American representation in the venire as compared to the jury; (5) the prosecutor's questions and statements during *voir dire*

7

examination and while exercising peremptory challenges; (6) whether the excluded African American venirepersons were a heterogeneous group sharing race as their only common characteristic; and (7) the race of the defendant, victim, and witnesses. *People v. Williams*, 173 Ill. 2d 48, 71 (1996). The court's determination of whether a *prima facie* case under *Batson* has been shown is a finding of fact that will not be overturned unless it is against the manifest weight of the evidence. *People v. Rivera*, 221 Ill. 2d 481, 502 (2006).

¶ 18 Before considering the above listed circumstances, however, we are inclined to briefly address the nature of defendant's argument on appeal. Here, defendant argues trial counsel's objection and subsequent explanation during *voir dire* was sufficient to establish a *prima facie* case under *Batson*. Defendant bases much of his argument on facts and circumstances that were not tendered to the court by trial counsel and not available for the court's consideration at the time the challenge was raised. For instance, defendant cites considerations such as that Jordan was the only African American venireperson who was questioned, that the remaining African American venireperson was never called, that the jury was devoid of African American representation, and that the State used one additional peremptory challenge, *inter alia*. "We remind defendant, *he* had the burden of establishing a *prima facie* case of purposeful discrimination before the trial court—not on appeal." (Emphasis in original.) *People v. Sanders*, 2015 IL App (4th) 130881, ¶ 33. Neither the circuit court nor this court is tasked with establishing defendant's *prima facie* case for him. Accordingly, the propriety of the circuit court's finding that defendant failed to establish a *prima facie* case will be based on trial counsel's proffered argument, coupled with the relevant facts and circumstances available to the court at the time of the challenge. See *People v. Shaw*, 2014 IL App (4th) 121157, ¶ 33 (providing that on remand for a *Batson* hearing, the circuit court may consider any notes or

8

observations it may have made contemporaneous to *voir dire* in addition to evidence and argument presented by defendant).

¶ 19                                     1. Racial Identity

¶ 20        The parties agreed in the circuit court and now on appeal that defendant and Jordan share the same race. See *People v. Partee*, 268 Ill. App. 3d 857, 865 (1994) (A party's on-the-record statements about the race of excluded venirepersons is an acceptable means of making a record for *Batson* purposes). This fact is not dispositive as it concerns a *prima facie* case for racial discrimination, but weighs in defendant's favor. *Williams*, 173 Ill. 2d at 71-72.

¶ 21                                     2. Pattern of Strikes

¶ 22        Our supreme court has advised that a pattern of strikes is created " 'where the strikes affect members of a certain race to such a degree or with such a lack of apparent nonracial motivation that it suggests the possibility of racial motivation.' " *Id.* at 72 (quoting *People v. Andrews*, 146 Ill. 2d 413, 429 (1992)). No such pattern existed here. In many cases, a *Batson* objection arises following several peremptory strikes, such that a discernable pattern has arisen. This consideration is irrelevant in the instant case where Jordan was the first juror stricken. See *id.* (the State's exercise of one peremptory challenge to exclude an African American venireperson is not strongly suggestive of racial motivation and does not constitute a pattern of strikes against African American venirepersons); *People v. Davis*, 345 Ill. App. 3d 901, 910 (2004); *Davis*, 231 Ill. 2d at 361 (the mere fact of a peremptory challenge of an African American venireperson who is the same race as defendant will not establish a *prima facie* case of discrimination).

¶ 23                                     3. Disproportionate Strikes

¶ 24    Next, we consider whether there was a disproportionate use of peremptory challenges against African American venirepersons. Again, Jordan was the first juror to be excused. As such, no disproportion could yet have existed at the time of the strike. But even if we were to consider the circumstances after the fact, the State excused one African American venireperson and one Caucasian venire person. This fact does not demonstrate a disproportionate use of peremptory challenges against African Americans. See *Williams*, 173 Ill. 2d at 73.

¶ 25                      4. Representation in the Venire as Compared to the Jury

¶ 26    Our next concern is the level of African American representation in the venire. Initially, we note that the exact racial composition of the venire is unknown. However, the case law instructs a party's on-the-record statements about the race of excluded venirepersons is an acceptable means of making a record for *Batson* purposes. *Partee*, 268 Ill. App. 3d at 865. Here, the parties agreed that, at a glance, 2 out of the 35 potential jurors in the venire were African American. Jordan was stricken, and the other African American potential juror was never questioned. Based on the parties' representations, there does not appear to have been any African American representation on the jury. This factor weighs in defendant's favor.

¶ 27                              5. State's Questions and Statements

¶ 28    The next relevant factor concerns the State's questions and statements both during *voir dire* and while exercising peremptory challenges. Here, the State asked each potential juror similar general questions about subjects such as their occupation, marital status, educational history, and family history. Defendant concedes that the State asked Jordan the same questions as the other jurors in the panel. We agree with defendant's assessment and find nothing remarkable as it relates to the questions posed by the State.

¶ 29                                      6. Heterogeneous Group

¶ 30    The sixth factor involves an examination of whether the excluded prospective African American jurors were part of a heterogeneous group sharing race as their only common characteristic. Our supreme court instructed that this sixth consideration is not mandatory where only one potential African American juror was excluded, leaving the court with no excluded group within which to compare any nonracial characteristics. *Williams*, 173 Ill. 2d at 74; see *People v. Peeples*, 155 Ill. 2d 422, 470 (1993) (where only one African American potential juror is excused, the factor regarding heterogeneity of excluded potential jurors is considered neutral).

¶ 31                                7. Race of Involved Parties

¶ 32    The final relevant factor to be considered is the race of defendant, the victim, and the witnesses. The record in this case does not provide for the race of the witnesses. However, the parties agree that both defendant and the victim were African American. Thus, the crime was not interracial in nature and does not support an inference that the State's peremptory strike was racially motivated.

¶ 33                                8. Summary

¶ 34    In his effort to make a *prima facie* case under *Batson*, trial counsel argued during *voir dire* that Jordan was one of two African American jurors in the venire and that based on his characteristics, counsel believed Jordan would typically be a good candidate to serve. These were not sufficient facts to establish a *prima facie* case.

¶ 35    In totality, no pattern or disproportion in the strikes existed, the prosecutor's questions and statements were not suggestive of discrimination, and the heterogeneity and race of the involved parties were not suggestive of discriminatory intent. As referenced above, the usage of one peremptory challenge to exclude an African American juror is not strongly suggestive of racial motivation. *Williams*, 173 Ill. 2d at 72.

11

¶ 36    Our review of the record does not reflect that trial counsel produced evidence sufficient to permit the circuit court to draw an inference that discrimination had occurred. Thus, appellate counsel was not ineffective for failing to raise this *Batson* claim on direct appeal, and defendant's petition failed to state an arguable claim on this basis.

¶ 37              B. Failure to Raise Collapsed *Batson* Inquiry Issue on Direct Appeal

¶ 38    In his second argument, defendant asserts that the court's response to trial counsel's attempt to establish a *prima facie* case of a discriminatory purpose for the State's strike demonstrates that the court wrongly collapsed the first two stages of the *Batson* inquiry. Defendant argues appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to set forth this argument in the circuit court. The State asserts that defendant forfeited this argument by failing to raise it in the circuit court. We disagree with the State's assertion that forfeiture applies here.

¶ 39    To preserve an issue for review, both a trial objection and a written posttrial motion raising the issue are required. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Our reading of the record reveals a clear objection to the way the court handled Jordan's dismissal and the filing of a posttrial motion alleging that the court "erred in refusing to inquire as to the peremptory challenge of prospective juror James Jordan pursuant to [*Batson*]." In our opinion, the thrust of defendant's argument, taken in totality, encompasses a claim that the court did not follow the correct procedures when it denied defendant's *Batson* challenge. It would be unfair to construe the argument made in defendant's posttrial motion as narrowly as the State wishes. See *People v. English*, 2013 IL 112890, ¶ 22 (forfeiture should be relaxed in a proceeding on a petition for postconviction relief where fundamental fairness so requires). Moreover, defendant skirts

12

forfeiture by raising his argument as part of an ineffective assistance claim. See *id.* As such, we reject the State's forfeiture argument.

¶ 40     Citing our supreme court's decision in *People v. Wiley*, 156 Ill. 2d 464, 475 (1993), defendant correctly asserts that it is error to collapse the first two steps of a *Batson* inquiry into a single procedure because doing so renders defendant's initial *prima facie* showing moot. Defendant argues the court collapsed the instant *Batson* inquiry in that the court suggested reasons for the strike. In support of his argument, defendant cites to the following comments: "I am feeling you have fallen way short of proving your *prima facie* case," and

> "[defense counsel] has not shown me enough that would permit me to draw an inference of discrimination has occurred. And don't forget that potential juror, Jordan, is a lifetime Department of Human Services employee, and people draw inferences from that. I mean, not good or bad, but I mean about the kind of person that is."

We compare the instant case to the First District's recent holding in *People v. Jones*, 2021 IL App (1st) 181266, ¶ 29, where the court instructed that a circuit court commits error if it is unclear whether the court found defendant established a *prima facie* case. In *Jones*, defendant alleged the circuit court improperly collapsed the distinctive phases of a *Batson* challenge where the court commented about its ability to imagine race-neutral explanations for the State's peremptory strikes. *Id.* ¶¶ 26, 31. The *Jones* court acknowledged that unless the circuit court is willing to advance the inquiry to the second stage, comments like these should remain unspoken. *Id.* However, the court went on to reject defendant's argument that the court's comments were made in passing, and that after these comments, the court clarified that it did not find a *prima facie* case had been made. *Id.* ¶ 31. In other words, the circuit court's ruling was

13

sufficiently clear to conclude that it had not advanced the challenge to the second stage of *Batson*. The same is true in the instant case.

¶ 41    We acknowledge that the court's musings regarding the State's reasoning for striking the juror were inappropriate at the first stage of a *Batson* inquiry. However, these isolated, errant, comments do not establish that the court improperly collapsed its *Batson* inquiry. First, the comments were made within the bounds of the *prima facie* showing component and were a clear response to defense counsel's own explanation as to why the State should have accepted the juror. Second, the State was never called upon to provide a race-neutral explanation for the juror's dismissal. Finally, the court clearly stated that it had based its ruling on the fact that defendant failed to make a *prima facie* case. For these reasons, it is clear the circuit court did not erroneously collapse its inquiry and counsel could not have been ineffective for failing to raise this argument. Therefore, defendant's petition failed to state an arguable claim on this basis.

¶ 42    C. Failure to Raise Cross-Section Challenge on Direct Appeal

¶ 43    Lastly, defendant asserts that his postconviction petition presented an arguable claim that appellate counsel was ineffective for not raising trial counsel's ineffectiveness on direct appeal based on trial counsel's failure to challenge defendant's venire as not having been drawn from a fair cross-section of the community. Defendant asserts that had trial counsel challenged the composition of the venire, counsel would have successfully shown that, *inter alia*, the underrepresentation of African American jurors was due to systematic exclusion. The State disagrees, arguing a cross-section challenge, if lodged, would have been unsuccessful.

¶ 44    As stated above, appellate counsel's failure to raise a meritorious claim may result in the denial of a defendant's right to effective assistance, however, it is not incompetent of counsel to refrain from raising meritless issues. *Easley*, 192 Ill. 2d at 329. Thus, unless the underlying issue

14

is meritorious, defendant suffers no prejudice from counsel's failure to raise it on appeal and cannot prevail on an ineffective assistance of appellate counsel claim. *Id.*

¶ 45        The sixth amendment to the United States Constitution requires that petit juries be drawn from fair cross-sections of the community. *Peeples*, 155 Ill. 2d at 450; U.S. Const., amend. VI. This requirement is a means of assuring an impartial jury, not a representative one. *Peeples*, 155 Ill. 2d at 450. To establish a *prima facie* violation of the cross-section requirement, defendants must show that:

> "(1) the group allegedly excluded is a distinctive group in the community; (2) the underrepresentation of that group in venires, from which juries are selected, is not fair and reasonable in relation to the number of such persons in the community; and (3) the underrepresentation is due to the systematic exclusion of that distinctive group in the jury selection process." *Id.* (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

Defendant's argument fails where, based on these facts, defendant's hypothetical argument would not have established a *prima facie* case.

¶ 46        On appeal, the parties agree defendant can establish the first *Duren* element. Regarding the second and third *Duren* elements, defendant cites to the fact that just 2 of the 35 jurors in the venire were African American, or 5.71%. Defendant juxtaposes this number with census data providing that African Americans comprise 18.3% of the total population of Peoria County. Based on this data, defendant flatly concludes that having only two African Americans in the venire demonstrates a *prima facie* violation of the cross-section requirement. We disagree.

¶ 47        Regarding the third *Duren* factor, trial counsel, in his hypothetical argument, would have needed to show that this statistical anomaly resulted from the systematic exclusion of African

15

American jurors, rather than by mere chance. See *People v. Bradley*, 348 Ill. App. 3d 677, 680 (2004). As such, defendant likens the instant case to *Duren*, 439 U.S. at 366-67 (finding the third factor was established where petitioner showed differing compositions of jury venires over several monthly periods relative to that during the month of the defendant's trial) and *People v. Hollins*, 366 Ill. App. 3d 533, 537, 544 (2006) (finding that defendant's right to equal protection and due process were violated where an audit performed by a software vendor uncovered intentional manipulation on behalf of the jury coordinator). However, we are unwilling to entertain the highly conjectural jump proposed by defendant that "had trial counsel engaged in a similar investigation [to that in *Hollins*,] he would have arguably uncovered a systematic exclusion."

¶ 48    This case is similar to the Fifth District's decision in *Bradley*, 348 Ill. App. 3d 677. In *Bradley*, the defendant argued that counsel was ineffective because, had counsel lodged a cross-section challenge, counsel would have uncovered a constitutionally flawed jury panel selection process. *Id.* at 679. The *Bradley* court stated that to entertain the defendant's argument, the court would have to necessarily assume that because the composition of the jury venire in that case was statistically improbable, counsel would necessarily have found a constitutionally flawed process in assemblance of the venire if he attempted to find it. *Id.* at 680. The court refused to make this assumption, as statistical anomalies may occur through random luck, and remarked, "[w]e simply are not prepared to find trial counsel constitutionally incompetent for a potentially phantom failing." *Id.* at 682.

¶ 49    We are, likewise, unwilling to entertain defendant's strained, hypothetical, argument. Even if trial counsel was taken aback by the racial composition of this venire, the record contains no further details upon which counsel could have argued the venire's composition was the result

16

of the systematic exclusion of African Americans. *People v. Flowers*, 132 Ill. App. 3d 939, 941 (1985) ("in the absence of evidence as [to] the method by which the venire was selected, statistics relating to the percentage of [African Americans] in the county are insufficient to make out a *prima facie* case of systematic and deliberate exclusion of [African Americans]."). Therefore, we find that neither trial nor appellate counsel was ineffective for failing to raise a cross-section challenge, and defendant's petition failed to state an arguable claim on this basis. For the aforementioned reasons, we affirm the circuit court's summary dismissal of defendant's petition.

¶ 50                              III. CONCLUSION

¶ 51        The judgment of the circuit court of Peoria County is affirmed.

¶ 52        Affirmed.